The State of Ohio, Appellee, *v.* Coleman, Appellant.

[Cite as *State v. Coleman* (1999), 85 Ohio St.3d 129.]

(No. 97–737—Submitted December 15, 1998—Decided March 31, 1999.)

132

*Stephen Schumaker,* Clark County Prosecuting Attorney, and *Stephen Collins,* Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker,* Ohio Public Defender, *Kelly Culshaw* and *J. Joseph Bodine, Jr.,* Assistant Public Defenders, for appellant.

---

FRANCIS E. SWEENEY, SR., J. Appellant has raised ten propositions of law for our consideration, which we have fully reviewed according to R.C. 2929.05(A). Pursuant to *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, and subsequent cases, we summarily reject without discussion appellant's Propositions of Law Nos. VII, VIII, IX, and X because they involve settled issues. (See Appendix.) We have independently assessed the evidence relating to the death sentence, weighed the aggravating circumstance against any mitigating factors, and reviewed the proportionality of the sentence. As a result, we affirm appellant's convictions and sentence of death.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his first proposition of law, appellant contends that his trial counsel rendered ineffective assistance. Reversal of convictions on ineffective assistance requires that the defendant show, first, "that counsel's performance was deficient" and, second, "that the deficient performance prejudiced the defense * * * [so as] to deprive the defendant of a fair trial." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. Accord *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.

### A. Failure to Challenge Insufficiency of Evidence

Coleman contends that his counsel failed to "adequately illustrate the insufficiency of the State's case" against him. He asserts that no physical evidence linked him to the crime scene, that testimony against him was inconsistent, and that a substantial number of leads pointed to a killer other than Coleman. Yet, despite Coleman's claims, his counsel's tactical choices did not fall below "an objective standard of reasonable representation." *Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.

Coleman cites materials and documents that he claims his counsel did not fully exploit, and that reflect witness bias, grounds for impeachment, and asserted inconsistencies between trial testimony and pretrial statements or former testimony. However, Coleman largely cites and relies upon materials released by the state in open pretrial discovery, as well as transcripts from other cases. Yet these materials were not in evidence before the trial court and are not in the record before this court. Because "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings," Coleman's attempt to have this court consider this material must fail. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the

syllabus. Any allegations of ineffectiveness based on facts not appearing in the record should be reviewed through the postconviction remedies of R.C. 2953.21. *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 228, 4 OBR 580, 582, 448 N.E.2d 452, 454.

Next, Coleman contends that no physical evidence linked him to the crime scene. However, Coleman admitted to police the day after the murder that he was with Stevens at Riddle's Ribs, near the murder scene, and that he left with her near the time of the murder. Additionally, Christopher Holtz, an unimpeached eyewitness, saw both Stevens and Coleman at Riddle's and in the alley outside, shortly before Holtz heard shots and the murder occurred.

Nor was it even necessary for the physical evidence to prove Coleman's identity as the killer. Over the course of several months, Coleman repeatedly told eyewitnesses that he intended to kill Stevens and why he intended to do so. On the day of the murder, he told Hope Strodes that he intended to shoot "the bitch" that day; also that day, he told James White that he was "going to take care of it [the murder]." Immediately after the murder, Coleman separately told Fayette Strodes and Lynnda Gaskins what he had done, demonstrating to Gaskins how "[t]he bitch fell like a rock." Later, he also admitted to White, Vera Strodes, and Gaskins that he had shot Stevens. Months later, Coleman admitted to inmate Kasler how and why he had shot Stevens and furnished details the killer would have known.

In any event, there was physical evidence and other testimony that reinforced Coleman's admissions that he had killed Stevens. Inmate Donovan Hayes corroborated White's testimony. Fayette, Gaskins, and White all testified to Coleman's obsession to get Stevens. Several witnesses testified that Coleman wore a flannel shirt that evening, with cockleburs stuck on it. Police later found a flannel shirt replete with cockleburs, identified as what Coleman wore that day, abandoned in a doghouse at the Strodeses' residence.

Dr. Stewart, the pathologist, confirmed descriptions given by Coleman to Gaskins and Kasler as to where and how Coleman shot Stevens, *i.e.*, two bullets to the back of the head. Also, the severed vertebrae corroborated Coleman's description that Stevens "drop[ped] like a rock" when she was shot. Furthermore, shells of .380 caliber bullets were found at the scene, and a forensic expert verified that the .380 caliber bullets were likely fired from a Davis P–380, the same type of gun that Coleman told Kasler he used to shoot Stevens. Additionally, Davis P–380 automatics come in chrome models and Hope Strodes saw Coleman with a silver, semi-automatic gun less than an hour before the murder. Given the strength of this evidence, Coleman's claim that a substantial number of leads point to another killer other than Coleman is baseless. Nothing in the record suggests any other killer.

Coleman's counsel presented credible and competent representation by attempting to challenge his identity as the killer, an enormous task given Coleman's propensity to talk about how he was going to kill Stevens and, after the deed, how he had done so. Counsel examined prosecution witnesses about uncertainties or inconsistencies in testimony. Counsel cross-examined witnesses about their asserted bias or impeached their character, where appropriate. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Here, no deficient performance of duty occurred.

Additionally, Coleman fails to establish that any prejudice arose from his counsel's tactical decisions. To show prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. In view of the compelling evidence of Coleman's guilt, different tactical choices would have made no difference.

### B. Voir Dire

Coleman contends that his counsel failed to adequately voir dire prospective jurors. However, Coleman fails to demonstrate that counsel's performance fell below "an objective standard of reasonable representation." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. As we have noted, "[t]he conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked." *State v. Evans* (1992), 63 Ohio St.3d 231, 247, 586 N.E.2d 1042, 1056. Counsel exercise discretionary judgment when they question jurors and "need not repeat questions about topics already covered by * * * opposing counsel, or the judge." *State v. Watson* (1991), 61 Ohio St.3d 1, 13, 572 N.E.2d 97, 108. Here, counsel had the benefit of questionnaires filled out by each juror. This court "will not second-guess trial strategy decisions" such as those made in voir dire. *State v. Mason* (1998), 82 Ohio St.3d 144, 157, 694 N.E.2d 932, 949.

Coleman complains that counsel in voir dire mischaracterized the nature and purpose of mitigation evidence. However, Coleman mostly cites examples of individual voir dire of venirepersons who never sat as jurors. Under the circumstances, these asserted misstatements by counsel could not have affected the verdict. As for the two jurors mentioned by Coleman that were on the jury, Coleman claims that counsel was deficient because of misstatements made while questioning individual jurors as to mitigation and the burden of proof. However, the trial court later correctly instructed the jury on the burden of proof and sentencing procedures, and a jury is presumed to follow the instructions given to it by the trial judge. *State v. Loza* (1994), 71 Ohio St.3d 61, 75, 79, 641 N.E.2d

1082, 1100, 1102–1103. Additionally, asking jurors their views on individual mitigating factors "is not essential to competent representation." *State v. Phillips* (1995), 74 Ohio St.3d 72, 86, 656 N.E.2d 643, 659. See, also, *State v. Goff* (1998), 82 Ohio St.3d 123, 140, 694 N.E.2d 916, 929. Counsel also exercised discretion as to questioning a prospective juror who never sat on the jury about a relationship with an unrelated murder victim. "[T]rial counsel stands in the better position to determine which members of the venire merit in-depth examination." *State v. Phillips,* 74 Ohio St.3d at 85–86, 656 N.E.2d at 659. Accord *State v. McGuire* (1997), 80 Ohio St.3d 390, 398, 686 N.E.2d 1112, 1119.

Coleman claims that his counsel did not ensure the fairness of jurors or inquire as to their views on the death penalty. Again, Coleman generally cites only examples of alternates or prospective jurors who never sat on the jury. Logically, individual voir dire of venirepersons who never sat on the jury cannot affect a verdict. Coleman fails to establish prejudice. *Bradley, supra.*

In fact, the record shows that counsel generally did question those individuals who sat on the jury about their death-penalty views. Thus, Coleman's complaints "mostly amount to hindsight views about how current counsel might have voir dired the jury differently." *State v. Mason,* 82 Ohio St.3d at 157, 694 N.E.2d at 949. Since this court does not "second-guess trial strategy decisions," Coleman's claim of ineffective performance lacks merit. *Id.*

### C.  Failure to Sever Disability Charge

Appellant claims that his counsel was ineffective for failing to request severance of Count II of the indictment, having a weapon under disability.

Under Crim.R. 8(A), joinder of offenses is proper where the offenses are "based on the same act or transaction." The law favors joining multiple criminal offenses in a single trial. *State v. Franklin* (1991), 62 Ohio St.3d 118, 122, 580 N.E.2d 1, 5. In Coleman's case, joinder was appropriate, since the weapons under disability charge was based upon the same act as the aggravated murder charge, that is, appellant shot and killed Stevens with a gun, which he was not permitted to have due to a prior conviction in 1994 for dealing in drugs.

Had counsel requested severance, the trial judge could have properly denied any motion to sever, had one been made. A defendant must affirmatively establish prejudice and an abuse of discretion where the trial court refuses to sever multiple charges. *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293, 298; *State v. Torres* (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288, syllabus. Appellant cannot show prejudice in this case. The state was required to prove that appellant sold drugs to Stevens and that he subsequently killed her in order to prevent her from testifying against him. Given the fact that the jury would hear of appellant's previous drug dealing, appellant was not

prejudiced by proof of an earlier drug conviction. See, *e.g., State v. Davis* (1988), 38 Ohio St.3d 361, 528 N.E.2d 925. Moreover, "an accused is not prejudiced by joinder when simple and direct evidence exists." *State v. Franklin,* 62 Ohio St.3d at 122, 580 N.E.2d at 6. In this case, proof of the 1994 conviction was very simple and direct, since it was done by stipulation of the parties in admitting proof of Coleman's previous conviction. Thus, Coleman's argument lacks merit, as it fails to establish either deficient performance of duty or prejudice under *Strickland.*

### D. Gruesome and Cumulative Evidence

Coleman argues that his counsel were ineffective in failing to object to three autopsy slides of the victim. Yet, counsel did object at the conclusion of the state's case. Regardless, nonrepetitive photographs, even if gruesome, are admissible if their probative value outweighs the danger of material prejudice to an accused. *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph seven of the syllabus.

In this case, the three autopsy slides were not particularly gruesome or cumulative but were highly probative. Two slides from different perspectives showed the back of Stevens's head with two bullet entry wounds. The third showed a facial laceration where one bullet had come to rest near her cheek. These slides illustrated Dr. Stewart's testimony and directly corroborated the testimony of Gaskins, Fayette Strodes, and Kasler, who knew from Coleman details the killer would have known. For instance, Coleman told Kasler that one bullet had ended up in Stevens's face just below her eye, and Coleman told Gaskins and Fayette about firing two shots to the back of the head. Thus, the probative value of the slides clearly outweighs any risk of unfair prejudice.

Additionally, appellant asserts that his counsel were deficient for not objecting to the crack cocaine exhibits or the recorded tapes of his drug sales. However, counsel did object but not until the conclusion of the state's case. In any event, the court correctly admitted these exhibits, since they directly proved the death-penalty specification. Coleman has not demonstrated prejudice by showing that a "reasonable probability" exists that any different result would have occurred without these exhibits. *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373.

### E. Failure to Object to Trial-Phase Evidence

Coleman complains that his counsel failed to object to the state's introduction of the trial-phase exhibits at the penalty hearing. However, counsel did not perform deficiently by failing to object. Almost all the trial-phase evidence was ultimately admissible in the sentencing phase, since it related to the nature and circumstances of the offense, to Coleman's history, character and background, to the R.C. 2929.04(A)(8) aggravating circumstance, or to the R.C. 2929.04(B)(2) or (B)(7) mitigating factors that Coleman specifically raised. In *State v. DePew*

(1988), 38 Ohio St.3d 275, 283, 528 N.E.2d 542, 552, we recognized that R.C. 2929.03(D)(1) permits "repetition of much or all that occurred during the guilt stage," by way of introduction of trial exhibits that are relevant to the aggravated circumstances the offender was found guilty of committing. Accord *State v. Woodard* (1993), 68 Ohio St.3d 70, 78, 623 N.E.2d 75, 81. In this case, evidence of Coleman's drug sales to Stevens, including the crack cocaine, tape recordings, and officer testimony, related directly to the R.C. 2929.04(A)(8) aggravating circumstance.

Appellant argues that evidence of Coleman's 1994 drug-trafficking conviction was not relevant in the penalty phase, since its admissibility was based upon the weapons under disability charge. However, this evidence was harmless. See *Woodard,* 68 Ohio St.3d at 80, 623 N.E.2d at 82–83 (Sherck, J., concurring). A myriad of other evidence at trial demonstrated that Coleman was a drug dealer, and the indictment for the sales to Stevens, which was directly relevant to the aggravating circumstance, also referred to the 1994 drug trafficking conviction. Thus, appellant has failed to establish either deficient performance or prejudice.

### F. Failure to Present Additional Mitigation Evidence

Coleman argues that his counsel failed to investigate his background or present available mitigation evidence. However, "[f]ailure to present mitigating evidence * * * does not in itself constitute proof of ineffective assistance[.]" *State v. Hamblin* (1988), 37 Ohio St.3d 153, 157, 524 N.E.2d 476, 480. Accord *Burger v. Kemp* (1987), 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638; *State v. Keith* (1997), 79 Ohio St.3d 514, 684 N.E.2d 47.

The record does not support Coleman's speculation that further investigation would have produced significant mitigating evidence. For example, Coleman argues that he had children, a potential mitigating factor. However, Coleman may or may not have taken care of or supported his children and, without such evidence, the fact that he fathered several children is hardly mitigating. Coleman argues that his friends cared about him, but the record suggests that his friends were drug dealers or users. Such evidence is not mitigating. Nor do we know that other family members had useful mitigating evidence to offer, and his father's testimony does not support that claim. Nor does it appear that Coleman was gainfully employed in a lawful occupation. Finally, counsel deliberately chose not to call the examining psychologist or have Coleman testify or make a statement. Examining the record, the lack of mitigation evidence does not indicate that counsel were ineffective. " 'It may be * * * that counsel conducted a diligent investigation, but [were] unable to find [more] substantial mitigation evidence.' " *State v. Otte* (1996), 74 Ohio St.3d 555, 566, 660 N.E.2d 711, 722. Such would seem to apply in appellant's case.

In summation, the record does not support Coleman's claim that his counsel failed to adequately investigate or present available mitigation. Coleman has not shown prejudice. "To do so would require * * * [showing the availability of] mitigating evidence counsel failed to present and * * * a reasonable probability that the evidence would have swayed the jury to impose a life sentence." *State v. Keith,* 79 Ohio St.3d at 536, 684 N.E.2d at 67. Thus, Coleman's first proposition of law claiming ineffectiveness of counsel lacks merit.

## SUFFICIENCY OF EVIDENCE

In his second proposition of law, appellant argues that the state failed to introduce sufficient evidence to prove aggravated murder beyond a reasonable doubt.

The standard for determining whether evidence is sufficient is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. As discussed in Proposition of Law I, the evidence clearly supports appellant's conviction.

Contrary to appellant's arguments, there was physical evidence that linked him to the crime. Stevens was shot with a .380 caliber firearm, either a government issue Colt or a Davis P–380. Hope Strodes saw appellant with a weapon resembling a Davis P–380, and appellant himself told Kasler that the murder weapon was a Davis P–380. An eyewitness, Holtz, also placed Coleman at the murder scene, and Coleman admitted to police that he was with Stevens shortly before she was shot.

Compelling evidence also established both Coleman's identity as the killer and prior calculation and design. For several months before the murder, Coleman repeatedly told White, Fayette Strodes, and Gaskins that he intended to kill Stevens so she could not testify in his drug trial. On the day of the murder, he told White and Hope Strodes that he intended to shoot Stevens that day, and just after he had done so, he also told Fayette Strodes and Gaskins what he had done. Later on, he also admitted to White, Vera Strodes, Warren, and Kasler that he had shot Stevens. Apart from White, who received a reduced sentence for testifying, these witnesses were neither biased against appellant nor was their testimony inconsistent. In any event, "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Furthermore, details Coleman gave to witnesses dovetailed with the autopsy results and other physical evidence, *i.e.*, that he shot Stevens twice in the back of the head and that she immediately collapsed due to the severance of her spinal cord.

Coleman attempts to present additional evidence that allegedly points to other suspects and to inconsistencies in testimony. Yet his claims are speculative at best and rest largely upon evidence that was not before the trial court and that cannot be considered by this court. *State v. Ishmail*, 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus. Viewed in a light most favorable to the prosecution, the state clearly demonstrated sufficient evidence to convict the appellant. Thus, we reject appellant's second proposition of law.

## EVIDENTIARY ISSUES

Appellant argues in his third proposition of law that he was prejudiced by the state's introduction of irrelevant and cumulative testimony and other physical exhibits from his prior conviction for aggravated drug trafficking. The state introduced evidence of Coleman's three drug sales to Stevens from July to August 1995. Witnesses testified to the details of these sales, and the state admitted several exhibits including crack cocaine. Appellant argues that to prove the R.C. 2929.04(A)(8) death specification, the state should have been limited to introducing two pieces of evidence: a copy of the indictment charging Coleman with an offense and brief testimony by the state that Stevens would have testified against Coleman at trial.

However, we believe that the trial court properly admitted evidence of Coleman's drug sales to Stevens. The admission of the underlying facts regarding the three separate drug sales tended to prove the essential elements of the specification. R.C. 2929.04(A)(8) requires that the state prove motive, and evidence was introduced to demonstrate that Stevens was the key witness against appellant and that her murder would hinder the state's case against him by preventing her testimony, which explained appellant's motive and deep obsession with killing Stevens. Thus, the drug sales are not considered "other acts" evidence limited by Evid.R. 404(B); rather, they were introduced to prove the R.C. 2929.04(A)(8) death-penalty specification. In *State v. Frazier* (1995), 73 Ohio St.3d 323, 338–339, 652 N.E.2d 1000, 1013–1014, we held that evidence that the accused previously raped the murder victim was "inextricably linked" to the murder when the victim was killed to silence her as a rape witness. Accord *State v. Keene* (1998), 81 Ohio St.3d 646, 661, 693 N.E.2d 246, 260.

As in *Frazier*, the state has proven in this case that Coleman purposefully killed his victim with prior calculation and design, that he did so because she was a witness to a crime, and that she was killed to prevent her testimony. As

appellant himself stated to Gaskins, "[I]f they don't have a witness, they don't have a case." These were not "wholly independent" crimes; hence, the state could reasonably prove not only that Stevens was a witness, but also precisely what crimes she witnessed and that she was a key witness. *Frazier*, 73 Ohio St.3d at 339, 652 N.E.2d at 1014. Nor do we find that the evidence was cumulative, as each police witness explained only those events which that witness directly observed. Thus, we find that appellant's third proposition of law lacks merit.

In his fifth proposition of law, appellant argues that the trial court abused its discretion in admitting four tape recordings into evidence because the tapes were partly inaudible. Three of these tape recordings were of the separate drug transactions in which appellant sold crack cocaine to Stevens. The fourth tape recording was of appellant's statement to police the day after the murder. However, Coleman failed to object at trial on this ground and thus waived all but plain error. *State v. Campbell* (1994), 69 Ohio St.3d 38, 630 N.E.2d 339. Plain error is error of such magnitude that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Underwood* (1983) 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus.

To be admissible, a tape recording must be " 'authentic, accurate and trustworthy.' " *State v. Rogan* (1994), 94 Ohio App.3d 140, 148, 640 N.E.2d 535, 540. Whether to admit "tape recordings containing inaudible portions is a matter within the sound discretion of the trial court." *State v. Gotsis* (1984), 13 Ohio App.3d 282, 283, 13 OBR 346, 347–348, 469 N.E.2d 548, 551, citing *United States v. Williams* (C.A.8, 1977), 548 F.2d 228.

In this case, uncontested testimony by police officers present at the transactions established the accuracy, authenticity, and trustworthiness of the tapes. The three tapes of Coleman's drug transactions with Stevens are filled with background noises, muffled sounds, and muttered conversations, which make the tapes impossible to understand at times except for scattered phrases. However, recorded tapes of actual events, such as street drug sales, should be admissible despite audibility problems, background noises, or the lack of crystal clear conversations, since they directly portray what happened. See, *e.g., State v. Rodriquez* (1990), 66 Ohio App.3d 5, 583 N.E.2d 384; *State v. Rogan.*

Given their authenticity, the trial court did not abuse its discretion in admitting the street tapes despite audibility problems. Officers at the scene who directly heard the radio transmissions testified at trial in order to make the recordings more understandable. Coleman had ample opportunity to cross-examine these officers, "thereby clarifying any problems caused by poor quality, * * * as well as the opportunity to offer his version of the inaudible portions[.]" *Rogan,* 94 Ohio App.3d at 149, 640 N.E.2d at 541. An authenticated tape is "much more likely to

be free from error than the words of a witness testifying from memory." *State v. James* (1974), 41 Ohio App.2d 248, 250, 70 O.O.2d 456, 457, 325 N.E.2d 267, 269.

In contrast, the fourth tape, Coleman's taped interview with the police, was understandable despite low voices, pauses, and inaudible phrases at times, and was authenticated by the detective who took Coleman's statement on January 3. Defendant cross-examined the detective regarding the contents of the taped statement. Appellant cannot demonstrate that the tapes are not accurate, authentic, or trustworthy. Tape recordings are the best evidence of their content, not transcripts prepared from them. *Rogan*, 94 Ohio App.3d at 148, 640 N.E.2d at 540. Moreover, Coleman's exculpatory conversation with police in which he denied killing Stevens directly supported Coleman's trial strategy without the need for his testimony. Coleman can demonstrate neither prejudice nor plain error; therefore, his fifth proposition of law is overruled.

## PEREMPTORY CHALLENGE

In his fourth proposition of law, appellant argues that prosecutors exercised a peremptory challenge in a racially discriminatory manner. *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, held that the Equal Protection Clause precludes "purposeful discrimination by the state in the exercise of its peremptory challenges so as to exclude members of minority groups from service on petit juries." *State v. Hernandez* (1992), 63 Ohio St.3d 577, 581, 589 N.E.2d 1310, 1313. In order to make a prima facie case of purposeful discrimination, an accused must demonstrate (a) that members of a cognizable racial group were peremptorily challenged, and (b) the "facts and any other relevant circumstances raise an inference that the prosecutor" used the peremptory challenges to exclude jurors "on account of their race." *Id.* at 582, 589 N.E.2d at 1313.

Prospective juror Sandra Blackmon, an African–American, disclosed during voir dire that her son was in prison for drug trafficking. The prosecutor explained his peremptory challenge by noting that when his office prosecuted Blackmon's son for selling drugs to an undercover informant, Blackmon expressed "an attitude * * * that her son could do no wrong and that everybody was lying about her son[.]" Since Coleman's case involved murder of a drug informant by a drug trafficker, and Blackmon's son was then in prison for drug trafficking, the prosecutor could reasonably decide not to have her on the jury.

The trial court did not abuse its discretion in accepting the prosecutor's explanation, which was race-neutral on its face. Courts have accepted prior involvement with drugs by family members of prospective jurors as a race-neutral explanation after a *Batson* challenge. See, *e.g., United States v. Fisher* (C.A.5, 1994), 22 F.3d 574, 577; *United States v. Hughes* (C.A.7, 1992), 970 F.2d 227, 230. Nothing in the record suggests a racial motivation, and " '[u]nless a

discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Purkett v. Elem* (1995), 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839. Finally, a trial court's finding of no discriminatory intent will not be reversed "absent a determination that it was clearly erroneous." *State v. Hernandez*, 63 Ohio St.3d at 583, 589 N.E.2d at 1314. The prosecutor's race-neutral explanation was credible and supported by the record; hence, it was not "clearly erroneous." Thus, we reject appellant's fourth proposition of law.

## DENIAL OF COUNSEL

Appellant argues in his sixth proposition of law that he was denied the right to the assistance of counsel because he was detained in a county other than where he was charged. Coleman complains that he spent most of the year prior to trial in various prisons outside Clark County.

Coleman was indicted on March 18, 1996. On May 6, counsel asked that he be housed in the Clark County Jail pending trial. Counsel asserted that the Orient correctional facility, where Coleman was housed at the time of the motion, was a ninety-minute drive each way from Springfield and that it took up to an hour to process into that facility. The trial court denied the request. Coleman also asserts that at times he was incarcerated at correctional facilities in Warren, Madison, and Ross Counties. However, Coleman does not dispute that from December 13, 1996 until his trial began on February 10, 1997, and throughout his trial, he was housed at the Clark County Jail.

Coleman relies on *Geders v. United States* (1976), 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592, which held that a trial court's prohibition against counsel's consulting with the defendant during an overnight recess, while the defendant was on the stand, interfered with the accused's Sixth Amendment right to counsel. If the state unlawfully interferes with Sixth Amendment rights, an accused need not establish prejudice. *Perry v. Leeke* (1989), 488 U.S. 272, 278–279, 109 S.Ct. 594, 599, 102 L.Ed.2d 624, 632; *United States v. Cronic* (1984), 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 668, fn. 25.

Nevertheless, as *Geders* recognizes, trial judges "must have broad power to cope with the complexities and contingencies inherent in the adversary process." *Geders,* 425 U.S. at 86, 96 S.Ct. at 1334, 47 L.Ed.2d at 598. Thus, "[n]ot every restriction on counsel's time or opportunity to * * * consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy* (1983), 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610, 619.

In this case, Coleman has not established that the trial court abused its discretion in refusing to house Coleman in the county jail. At times, courts have

found no constitutional deprivation where an accused pending trial was in prison some distance away, rather than in a local jail. See *Trotter v. State* (Ind.1990), 559 N.E.2d 585, 587; *State v. Orricer* (1963), 80 S.D. 126, 120 N.W.2d 528; *Smith v. State* (Ala.App.1996), 698 So.2d 189, 213. Moreover, Coleman does not assert that his counsel lacked access to him by mail, telephone, or personal travel to the prison.

Finally, because of continuances, counsel had over ten months to prepare their case. Furthermore, Coleman was in the Clark County Jail for the eight weeks immediately before the trial. Even if Coleman's rights were found to have been violated earlier, any remedy for Sixth Amendment violations "should be tailored to the injury suffered from the constitutional violation." *United States v. Morrison* (1981), 449 U.S. 361, 364, 101 S.Ct. 665, 668, 66 L.Ed.2d 564, 568. In this case, the effect of any violation clearly dissipated, given counsel's ready access to Coleman for nearly two months before trial. Thus, Coleman's sixth proposition of law fails.

## INDEPENDENT SENTENCE REVIEW

Pursuant to R.C. 2929.05(A), we must independently weigh the aggravating circumstance against any mitigating factors presented by appellant and determine whether appellant's sentence is proportionate to death sentences imposed in similar cases.

The evidence in this case clearly proves beyond a reasonable doubt that appellant committed the murder of "a witness to an offense who was purposely killed to prevent the victim's testimony in any criminal proceeding," and that the murder was not committed during or immediately after the offense to which the victim was a witness, as set forth in R.C. 2929.04(A)(8).

In mitigation, Coleman presented the testimony of his father, who stated that appellant was "pretty much like any other kid." He testified that Coleman had been active in Boy Scouts and in sports, was generally obedient but somewhat "hardheaded" at times. Appellant had a normal childhood, and nothing in his father's testimony suggests strong mitigating factors as to appellant's history, character, and background.

The defense presented no other evidence, and Coleman neither testified nor made an unsworn statement. At Coleman's request, the trial court instructed the jury on only R.C. 2929.04(B)(2) and (B)(7) as relevant statutory mitigating factors.

Coleman argued at trial that the extensive pressures he was under were a mitigating factor under R.C. 2929.04(B)(2). However, Coleman's legal problems resulting from his voluntary choice to sell drugs do not qualify as "duress,

coercion, or strong provocation" specified in R.C. 2929.04(B)(2). The "stress from the personal turmoil in [appellant's] life" does not qualify as a (B)(2) mitigating factor. *State v. Dickerson* (1989), 45 Ohio St.3d 206, 217, 543 N.E.2d 1250, 1261. Accord *State v. Bedford* (1988), 39 Ohio St.3d 122, 133, 529 N.E.2d 913, 924.

Coleman argues in proposition of law seven, *inter alia*, that the facts of the crime are mitigating because Stevens "was involved in a great deal of criminal activity and drug use." This fact does not fall within the listed statutory mitigating factors. See R.C. 2929.04(B)(1)–(6). Moreover, "the unlawful taking of a human life cannot be deemed less serious simply because the victim was involved in unlawful activity." *State v. Williams* (1997), 79 Ohio St.3d 1, 18, 679 N.E.2d 646, 661. Accord *State v. McNeill* (1998), 83 Ohio St.3d 438, 454, 700 N.E.2d 596, 611; *State v. Green* (1993), 66 Ohio St.3d 141, 153, 609 N.E.2d 1253, 1263. Thus, no mitigating weight should be assigned to Stevens's drug purchases or usage.

Coleman also relies on residual doubt, but that is no longer a mitigating factor. *State v. McGuire*, 80 Ohio St.3d 390, 686 N.E.2d 1112, syllabus. Moreover, the evidence here precludes any residual doubt.

None of the other statutory mitigating factors appears applicable. For instance, no evidence of "mental disease or defect," R.C. 2929.04(B)(3), exists. Also, Coleman was twenty-seven at the time of the offense; hence, R.C. 2929.04(B)(4), consideration of the youth of the offender, is inapplicable. The record is also devoid of any mitigating (B)(7) "other factors." Coleman never expressed remorse for his crime or accepted responsibility for it.

In sum, the sparse mitigation evidence presented by appellant clearly does not outweigh the aggravating circumstance in this case beyond a reasonable doubt. After extensive thought and consideration, Coleman deliberately executed a witness in order to escape prosecution, an act that "strikes at the heart of the criminal justice system." *State v. Keene*, 81 Ohio St.3d at 671, 693 N.E.2d at 266–267. Previous cases involving the R.C. 2929.04(A)(8) specification have contained additional aggravating circumstances. Nonetheless, even after considering that fact, we find appellant's death sentence appropriate and proportionate to sentences imposed in similar cases where murder was used to silence witnesses. Cf. *State v. Keene; State v. Frazier; State v. Lawson* (1992), 64 Ohio St.3d 336, 595 N.E.2d 902; *State v. Hooks* (1988), 39 Ohio St.3d 67, 529 N.E.2d 429.

Accordingly, we affirm both appellant's convictions and sentence of death.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

APPENDIX

PROPOSITION OF LAW I: "When defense uses trial strategies that are harmful to their client and fails to object to obvious constitutional errors during trial, a capital defendant is deprived of the right to the effective assistance of counsel that is guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, [Sections] 9, 10 and 16 of the Ohio Constitution."

PROPOSITION OF LAW II: "When the state fails to introduce sufficient evidence of aggravated murder, a resulting conviction deprives a capital defendant of substantive and procedural due process as guaranteed by the Eighth, Ninth and Fourteenth Amendments to the United States Constitution, as well as Article I, Sections 1, 16 and 20 of the Ohio Constitution."

PROPOSITION OF LAW III: "A capital defendant is denied his rights to a fair trial, due process of law and a reliable determination of his guilt and sentence as guaranteed by the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution when irrelevant and cumulative testimony and other physical exhibits from a prior trial are admitted into evidence when their prejudicial effect outweighs their probative value."

PROPOSITION OF LAW IV: "The defendant is entitled to a new trial when the state uses its peremptory challenge in a racially discriminatory manner in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, [Section] 2 of the Ohio Constitution."

PROPOSITION OF LAW V: "A conviction based on the admission of tape recordings which are so inaudible as to create a danger of unfair prejudice substantially outweighing any probative value violates the Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution as well as Article I, [Sections] 2, 10 and 16 of the Ohio Constitution."

PROPOSITION OF LAW VI: "When a capital defendant is detained in a county other that [sic] that in which he is charged for a capital crime, he is denied the rights to confer with counsel, assist in the preparation of his defense, and the assistance of counsel as guaranteed by [the] Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sec[tions] 2, 9, 10, and 16 of the Ohio Constitution."

PROPOSITION OF LAW VII: "Ohio's capital sentencing scheme is unconstitutional as applied because it results in sentences which are inconsistent, inappropriate and disproportionate to the penalty imposed in similar cases in violation of the Eighth and Fourteenth Amendments to the United States Constitution [and]

Article I, Sections 9 and 10 of the Ohio Constitution, and Ohio Revised Code Section 2929.05(A)."

PROPOSITION OF LAW VIII: "Ohio Rev.Code Ann. [Section] 2929.04(A)(8) is unconstitutionally vague. Therefore, a death sentence predicated on the (A)(8) aggravating circumstance violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I, [Section] 9 of the Ohio Constitution."

PROPOSITION OF LAW IX: "Sentencing an individual to death in violation of treaties to which the United States of America is a signatory violates the Supremacy Clause of the United States Constitution."

PROPOSITION OF LAW X: "The death penalty authorized by the Ohio Revised Code deprives capitally charged defendants of their lives without due process of law, denies equal protection and imposes cruel and unusual punishment in violation of the Ohio and United States Constitutions."