OPINION *Page 2 
{¶ 1} Defendant-appellant Charles Walenciej appeals from his convictions entered in the Jefferson County Common Pleas Court. On appeal, he raises allegations of ineffective assistance of counsel for failure to seek severance of one of the charges and inadequate cross-examination of witnesses. He then states that the court should have excluded the victim's identification testimony due to an unduly suggestive photographic array. He also claims that his convictions were against the manifest weight of the evidence. For the reasons stated below, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On September 25, 2006, seventy-four year old Margaret DeFrank awoke just after 6:30 a.m. to find a man in the bedroom of her Steubenville residence. He had entered by breaking a basement window, and he was armed with a knife measuring over eight inches long that he ended up leaving on the victim's bed. (Tr. 105, 208). The intruder pushed the victim back, piled a quilt and pillows over her head, warned her not to look at him and cut the telephone line. (Tr. 136). He asked where her money and keys were and proceeded to ransack her entire house. (Tr. 137). For instance, he removed drawers from dressers, broke open various boxes and threw the contents out of the kitchen cupboards and the refrigerator. (Tr. 141-144). He fled in the victim's car after stealing money, jewelry and other objects. (Tr. 118-119, 142-143).
 {¶ 3} A Steubenville detective suspected appellant and asked the Jefferson County Sheriff's Department to compile a "six pack" photographic "lineup" containing a picture of appellant. (Tr. 194). The detective also procured an audio recording of appellant's voice from a prior interview. (Tr. 196). When presented to the victim the next day, the victim opined that the recorded voice was the intruder's voice. (Tr. 144-145, 195). She then picked appellant out of the photographic array. (Tr. 146, 198).
 {¶ 4} Also on September 26, 2006, while investigating this offense, the detective gained information that appellant, a parolee and prior violent felon, sold a .22 caliber semi-automatic handgun for $50 a day or two prior. On September 27, 2006, the stolen vehicle was discovered in the 500 block of Linden Avenue in Steubenville. On a tip, the police went to appellant's aunt's house 60 yards down at 609 Linden *Page 3 
Avenue to execute appellant's arrest warrant. His relatives claimed that he was not there. However, police watched the house while procuring a search warrant, and appellant was thereafter arrested at the house. (Tr. 212-214).
 {¶ 5} Appellant was indicted on four counts: aggravated burglary; aggravated robbery; felonious assault; and having a weapon while under disability. He filed a motion to suppress the victim's identification due to allegations of an unduly suggestive photo array. On December 12, 2006, the trial court denied appellant's motion after a hearing.
 {¶ 6} The jury trial commenced on December 14, 2006. The victim testified to appellant's actions of ransacking her home and stealing her possessions. She explained how she could not breathe well from under the covers and pillows and how this caused a spell of high blood pressure and vomiting. (Tr. 148-149). She identified appellant in court and explained that she had identified his voice and photograph for the police. (Tr. 144-147). She disclosed that she had many opportunities to view appellant's face throughout his destruction of her home as she peeked from the covers in order to breathe. She insisted that his face was stuck in her mind, she would never forget his face, and she had no doubt about her identification. (Tr. 137-139, 158).
 {¶ 7} Two detectives testified about the investigation. Two citizens testified about appellant's possession and sale of the handgun. (Tr. 121, 129). Appellant's girlfriend, who had been listed as an alibi witness, testified that she initially complied with appellant's request to provide a fabricated alibi. She said she was instructed over the telephone from jail and by letter to say that she picked him up at the Circle K just after 6:00 a.m. and brought him to her apartment. (Tr. 169-176). However, she decided not to go through with the false alibi prior to trial.
 {¶ 8} Appellant's other girlfriend testified for the defense that appellant stayed at her house the night before the robbery but left a little after 6:00 a.m. and never returned, even though they had planned to go to his appointment with his parole officer together. (Tr. 234-237). She noted that the victim's house is a couple blocks from her residence. (Tr. 238-240).
 {¶ 9} The jury found appellant guilty of aggravated burglary, aggravated robbery and the weapons charge but found him not guilty of felonious assault. He was sentenced the next day to ten years for aggravated burglary, nine years for aggravated robbery and three years for the weapons charge, all to run consecutively. His *Page 4 
sentence was journalized on December 18, 2006, and appellant filed timely notice of appeal therefrom.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 10} Appellant's first assignment of error provides:
 {¶ 11} "THE FAILURE OF DEFENSE COUNSEL TO SEVER COUNT THREE OF THE INDICTMENT FROM COUNTS 1, 2, AND 4 ALONG WITH DEFENSE COUNSEL'S FAILURE TO SECURE COMPLETE CROSS-EXAMINATION OF THE STATE'S WITNESSES RESULTED IN PREJUDICIAL ERROR AND INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 12} In order to prevail on a claim of ineffective assistance of counsel, the defendant has the burden to establish two things: (1) that counsel's performance was deficient, and (2) that counsel's deficiency prejudiced the defense. State v. Reynolds (1998), 80 Ohio St.3d 670,674, citing Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonableness. Id. The defendant must produce evidence that counsel acted unreasonably by substantially violating essential duties owed to the client. State v. Sallie (1998), 81 Ohio St.3d 673, 674. Because attorneys are presumed competent, reviewing courts must refrain from second-guessing strategical, tactical decisions and strongly assume that counsel's performance falls within a wide range of reasonable legal assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558. See, also,State v. Burley (Aug. 11, 1998), 7th Dist. No. 93CA204 (a defendant is not guaranteed the right to the best or most brilliant counsel).
 {¶ 13} Upon demonstrating counsel's deficient performance, the defendant then has the burden to establish prejudice to the defense as a result of counsel's deficiency. Reynolds, 80 Ohio St.3d at 674. The reviewing court looks at the totality of the evidence and decides if there exists a reasonable probability that, were it not for serious errors made, the outcome of the trial would have been different.Strickland, 466 U.S. at 695-696. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 14} Appellant presents two issues under this assignment. First, he complains that defense counsel failed to effectively cross-examine the state's witnesses. In support, he lists how many questions counsel asked of each witness, concluding that the defense asked only forty-eight questions of seven state witnesses. *Page 5 
 {¶ 15} Initially, we note that counsel reserved questioning Detective Holzworth until the defense's own case, which would technically increase the number of questions asked of a state witness. Additionally, appellant concedes that the cross-examination of the witness who purchased appellant's gun was effective and that the cross-examination of the other witness to this sale effectively illuminated her prior felony convictions.
 {¶ 16} Next, we must point out that any matters of ineffective assistance of counsel that are not in the record before this court cannot be considered on direct appeal. See, e.g., State v. Hartman
(2001), 93 Ohio St.3d 274, 299; State v. Hill (2001), 90 Ohio St.3d 571,573, citing State v. Ishmail (1978), 54 Ohio St.2d 402. Thus, if appellant is suggesting that counsel left certain facts undisclosed by failing to ask particular questions, such subject is not properly before this court at this time. See id. Moreover, since various questions may have actually elicited negative information, an argument for prejudice is difficult to sua sponte conjure.
 {¶ 17} What is more important, appellant does not enlighten us as to what questions should have been asked based upon the existing trial record. Rather, he merely relies on what he considers a facially low number of questions asked and apparently seeks this court to formulate its own theories on what questions were required for effective assistance.
 {¶ 18} There exists a wide range of reasonable professional assistance, and there is a strong presumption that counsel's conduct fell within such range. State v. Conway, 109 Ohio St.3d 412,2006-Ohio-2815, ¶ 101. "The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." Id.
 {¶ 19} We cannot say that the number of questions asked was facially deficient or that there was a reasonable probability that such alleged deficiency prejudiced the defense. Appellant's first argument is overruled.
 {¶ 20} The second issue presented under this assignment of error contends that defense counsel was ineffective by failing to seek (and the court committed plain error by failing to grant) severance of the having a weapon while under disability count from the other counts related to Mrs. DeFrank, citing Crim.R. 14. (The text of this assignment of error incorrectly states that count three should have been severed; yet, it is the weapons charge in count four upon which his argument revolves). Appellant *Page 6 
urges that he was prejudiced in his burglary/robbery trial when the jury heard about his prior violent felonies, which were admissible to show why it was unlawful for him to possess a handgun. He states that since he did not testify, these prior crimes would not have been admissible in the burglary/robbery trial.
 {¶ 21} Crim.R. 8(A), which appellant does not cite or rely on, states:
 {¶ 22} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."
 {¶ 23} By failing to cite this rule, appellant does not urge that the original joinder was improper. Rather, his argument focuses on the ability to sever joined offenses under Crim.R. 14. This rule provides relief from prejudicial joinder and states in pertinent part:
 {¶ 24} "If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment * * * the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires."
 {¶ 25} The state cites various cases where a weapons under disability charge was found to have been properly joined with other charges. See, e.g., State v. Coleman (1999), 85 Ohio St.3d 129. We recognize that inColeman, the defendant was charged with the weapons offense for possessing the weapon that killed the victim, and thus, the two offenses were related. Whereas in the case before us, the robbery/burglary was not shown to be related to the weapons charge other than that they occurred in a close time frame. However, as aforementioned, appellant is raising only Crim.R. 14, and it is Crim.R. 8 that involves the relatedness of the offenses. In any case, we proceed to address the existence of prejudice.
 {¶ 26} That is, a defendant who asserts that joinder was improper has the burden of affirmatively demonstrating that the joinder is prejudicial. State v. Brooks (1989), 44 Ohio St.3d 185, 194, citingState v. Roberts (1980), 62 Ohio St.2d 170, 175. Yet, the test for joinder is more lenient than the other acts evidence prohibition in cases of severed offenses. State v. Franklin (1991), 62 Ohio St.3d 118,122. *Page 7 
 {¶ 27} "Joinder may be prejudicial when the offenses are unrelatedand the evidence as to each is very weak * * * but it is otherwise when the evidence is direct and uncomplicated and can reasonably be separated as to each offense. Id. at 193 (emphasis added), comparing United Statesv. Ragghianti (C.A.9, 1975), 527 F.2d 586 (two separate bank robberies without substantial identification of the perpetrator). The concern is whether the proof is so complex that the jurors cannot be expected to segregate the evidence in order to ascertain whether the elements of each offense have been established by the relevant proof. See id. at 194. On this topic, the Supreme Court has pronounced:
 {¶ 28} "This essential problem is not generally held to be present, however, where the evidence relative to the various charges is direct and uncomplicated, so that the jury is believed capable of segregating the proof on each charge. In our view, the direct and substantial nature of the state's case herein debilitates defendant's assertion that the jury based its finding of guilt upon a cumulation of the evidence. Moreover, defendant has not shown that the proof for an offense for which he was convicted would have been insufficient had these cases not been joined in the same trial." Id., quoting Roberts,62 Ohio St.2d at 175 (Citations omitted).
 {¶ 29} Here, the evidence of each offense was simple and direct. The evidence was not complex, nor was it weak. There was sufficient evidence to support each conviction. As a matter of fact, sufficiency is not raised in this appeal, likely because the case comes down to credibility. Weight of the evidence is raised and will be discussed in assignment of error number three. As will be shown infra, the evidence to support each conviction was substantial.
 {¶ 30} Lastly, we must point out that the jury found appellant not guilty of felonious assault. This supports the state's position that the jury was not confounded by the evidence regarding the weapons charge. See, e.g., State v. Fitts, 5th Dist. No. 2005CA92, 2006-Ohio-678 (the fact that the jury acquitted on various counts shows they followed the instruction to consider each offense separately). Notably, the court here had instructed the jury with a multiple counts charge, warning them to consider each count separately and to remain uninfluenced by the verdict on the other counts.
 {¶ 31} Finally, in comparatively evaluating prejudice, we note that the fact that the defendant had a weapons disability from prior violent felonies would have been just as (if not more than) prejudicial in a murder case such as Coleman as it is here in *Page 8 
a burglary/robbery case. See State v. Coleman (1999), 85 Ohio St.3d 129. See, also, State v. Davis (1988), 38 Ohio St.3d 361 (capital case permitted underlying crimes in to prove joined offense of having a weapon under disability).
 {¶ 32} For all of these reasons, there is no indication that the jury's verdict was based upon a cumulation of evidence. As such, even if we consider for the sake of argument that counsel rendered deficient performance in failing to seek severance, the type of prejudice necessary for reversal of non-severed cases is lacking here.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 33} Appellant's second assignment of error contends:
 {¶ 34} "THE TRIAL COURT ERRORED [SIC] IN DENYING DEFENSE COUNSEL'S MOTION TO EXCLUDE SIX-PACK IDENTIFICATION OF DEFENDANT."
 {¶ 35} Appellant complains that the six pack photo array was unduly suggestive. Specifically, he complains that the background of his picture is different than that of the other five pictures. He states that the color and texture of the background acted to distinguish his picture and draw the eye to it.
 {¶ 36} "When a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." State v. Waddy (1992), 63 Ohio St.3d 424, 438 (emphasis added). Thus, even if the confrontation procedure was unduly suggestive, identification is still permissible if, under the totality of the circumstances, the identification is reliable. State v. Parker (1990),53 Ohio St.3d 82, 87. In evaluating the reliability of the identification, the following factors are relevant: the witness's opportunity to view the criminal at the time of the crime; the witness's degree of attention during the offense; the accuracy of the witness' prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. State v. Williams (1995),73 Ohio St.3d 153, 163, citing in Neil v. Biggers (1972), 409 U.S. 188, 199-200.
 {¶ 37} Here, the victim had many opportunities to view appellant during his prolonged rampage through her home. He turned the lights on, allowing for a better view of him. He kept coming back to her bedroom asking her what was in various boxes and cabinets that he discovered and asking her where money and keys were. *Page 9 
She viewed him directly and surreptitiously through the dresser mirror next to her bed. She paid close attention to his activities. Her level of certainty was absolute during her viewing of the photo array. (Supp.Tr. 25). The time between the crime and the viewing was a mere one day. Lastly, she also identified his voice separate and apart from his photograph. Thus, her identification is reliable.
 {¶ 38} Regardless of the reliability prong, the photographic array was not unduly suggestive. For instance, as for the subjects themselves, there are no significant variations in hair length, complexion, age, features or dress. See State v. Murphy (2001), 91 Ohio St.3d 516, 534. The complained of difference in backgrounds relates to the space between the lines on the height chart behind each of the subjects. See State Exhibit Number Three. That is, the lines in appellant's height chart are six inches apart, and the lines on the other five height charts are one inch apart. Additionally, the color of each background is white, but appellant's white background seems tinged with a bit of a blue hue.
 {¶ 39} Appellant concurs in the holding that a single distinctive feature on a defendant, such as a clean shaven face or a beard, is not enough to make a procedure unduly suggestive. See State v. Gomez, 3d Dist. No. 16-04-10, 2005-Ohio-1606. However, he then seems to contend that backgrounds are inherently more suggestive than subjects. This argument is specious under the facts herein. Certainly, the distance between spaces on a background height chart are less suggestive than an array full of bearded men when the defendant is clean shaven.
 {¶ 40} In fact, it has generally been held that a photo array is not unduly suggestive due solely to different backgrounds styles. SeeState v. Parrish, 2d Dist. No. 21091, 2006-Ohio-2677, ¶ 36 (defendant's background darker than others); State v. Nelson (June 19, 2003), 8th Dist. No. 81558, 2003-Ohio-3219; State v. Browner (May 31, 2001), 4th Dist. No. 99CA2688, 2001-Ohio-2518 (defendant's was only one with white background). Furthermore, specific to the array before us, the distinctions reviewed do not fit the category of unnecessarily suggestive. Lines in height charts and blue tinges do not constitute suggestive procedures. We point out that this is not a case of the defendant being the only subject in a jail environment. See State v.King (Mar. 22, 2000), 7th Dist. No. 95CA163 (expressing concern over defendant being only one of two subjects with jail bars behind them where other five subjects had no bars). Rather, all subjects here are in the same environment. *Page 10 
 {¶ 41} Additionally, the detective testified that he used cardboard cut outs around each subject's face due to the fact that the intruder was wearing a hooded sweatshirt. (Supp.Tr. 19-20, 22). See, also, State's Exhibit Number Two. Thus, the complained of backgrounds were essentially blocked out for the study of the photographs. Moreover, the standard instructions read aloud to the victim warned her against paying attention to markings or differences in picture styles. (Supp.Tr. 22, 24). See, also, State's Exhibit Number One. Finally, there was no indication of steering by the detective displaying the array. As he explained, the Sheriff's Department put the array together for him using their computer program.
 {¶ 42} In conclusion, appellant failed to meet his burden at the suppression hearing to show that the array was unduly suggestive of his guilt. In any event, the victim's identification can reasonably be considered reliable under the totality of the circumstances surrounding that identification. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 43} Appellant's third and final assignment of error alleges:
 {¶ 44} "THE DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 45} On count one, appellant was convicted of aggravated burglary for trespassing by force, stealth, or deception in an occupied structure when someone other than an accomplice was present, with purpose to commit any criminal offense while having a deadly weapon on or about his person or under his control. R.C. 2911.119(A)(2). On count two, appellant was convicted of aggravated robbery for committing a theft offense while having a deadly weapon on or about his person or under his control and either displaying the weapon, brandishing it, indicating that he possessed it, or using it. R.C. 2911.01(A)(1). On count four, appellant was convicted of having a weapon while under disability for knowingly acquiring, having or carrying a firearm after being convicted of any felony offense of violence. R.C. 2923.13(A)(2). On appeal, appellant briefly argues that the jury's verdict was misguided and contrary to the manifest weight of the evidence.
 {¶ 46} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. The reviewing court determines whether the trier of *Page 11 
fact clearly lost its way and created a manifest miscarriage of justice. Id. Where the criminal case was tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. Id. at 389. This is only done in exceptional circumstances. Id. at 387.
 {¶ 47} When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. State v.Gore (1999), 131 Ohio App.3d 197, 201. This is because the jury is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying before it. Seasons Coal Co. v. Cleveland (1994),10 Ohio St.3d 77, 80; State v. DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 48} Here, the jury heard the victim testify that it was appellant who broke into her house through a basement window, confronted her, asked her where to find various items to steal, ransacked her house, and stole her belongings and vehicle. One could easily find a trespass by force and stealth and the intent and actual commission of theft among other crimes.
 {¶ 49} A knife, which did not belong to the victim, was discovered in her bed. The victim noticed appellant feeling around the bed as if he lost something. The cord of the telephone next to her bed was cut by appellant. Thus, it can be concluded that he used the knife, a deadly weapon, in the commission of the offense.
 {¶ 50} The victim's vehicle was discovered two days after the burglary/robbery near the house in which appellant was hiding. In any event, the victim was confident in her identification of appellant as the perpetrator. The officer confirmed that the victim's position in bed offered her a view of any perpetrator both directly and by way of a mirror. The victim's testimony that appellant burglarized and robbed her was not incredible. As such, her credibility and the weight to be given to her identification testimony are jury questions which shall not be disturbed. The convictions of aggravated robbery and aggravated burglary were not contrary to the manifest weight of the evidence.
 {¶ 51} As for the weapons charge, two witnesses testified that appellant possessed and sold the handgun now in police custody. The jury had the opportunity to view these witnesses demeanor, gestures and voice inflections as they testified. The jury found them to be credible as could any rational person. An officer credibly *Page 12 
testified as to appellant's disability. As such, the conviction for having a weapon while under disability is not contrary to the manifest weight of the evidence.
 {¶ 52} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 DeGenaro, P.J., concurs. Waite, J., concurs. *Page 1