OPINION
{¶ 1} Defendant, Paul Parrish, appeals from his conviction and sentence for burglary.
 {¶ 2} As a result of his involvement in a series of burglaries in Huber Heights, Defendant was initially indicted on one count of burglary in violation of R.C. 2911.12(A)(4). Defendant filed a motion to suppress his statements to police.
 {¶ 3} Subsequently, the State dismissed the original indictment and reindicted Defendant on four counts of burglary as follows: count two in violation of R.C. 2911.12(A)(4), count ten in violation of R.C. 2911.12(A)(1), count eleven in violation of R.C. 2911.12(A)(3), and count twelve in violation of R.C.2911.12(A)(2). Defendant filed a second motion to suppress the pretrial identification evidence.
 {¶ 4} Following a hearing, the trial court overruled both of Defendant's motions to suppress. Thereafter, Defendant entered into a plea agreement with the State. Defendant pled no contest to two counts of burglary, counts two and ten, and was found guilty by the trial court. In exchange, the State dismissed the remaining burglary charges, counts eleven and twelve.
 {¶ 5} The trial court sentenced Defendant to concurrent prison terms of five years on count ten and twelve months on count two. Defendant timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 6} "A STATEMENT GIVEN DURING A CUSTODIAL INTERROGATION PRIOR TO THE GIVING OF A DEFENDANT'S MIRANDA RIGHTS MUST BE SUPPRESSED."
 {¶ 7} Defendant argues that the trial court erred in failing to suppress statements he made to police which were the product of custodial interrogation and not preceded by Miranda
warnings.
 {¶ 8} In reviewing a trial court's decision on a motion to suppress, an appellate court is required to accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's conclusion, whether they meet the applicable legal standard.State v. Satterwhite (1997), 123 Ohio App.3d 322.
 {¶ 9} The facts found by the trial court are as follows:
 {¶ 10} "Co-Defendants Paul L. Parrish (`Parrish') and Aaron L. Cauley (`Cauley') were re-indicted on August 5, 2004 on several counts of burglary which occurred in the City of Huber Heights, Ohio. The facts set forth below regarding the arrests of the Co-Defendants were established at the August 20, 2004 hearing on their respective motions to suppress.
 {¶ 11} "On or about May 11, 2004, Detective Michael Noll (`Noll'), while investigating a call that two people were in someone's back yard, went to homes of Parrish and Cauley. According to Noll, neither was home, so he left his business card and requested that each call him. The following day, Parrish telephoned Noll. As a result, Noll and Detective Jeffrey Colvin (`Colvin') went to Parrish's home and asked him to come back to the Huber Heights police department. According to Noll, Parrish voluntarily agreed.
 {¶ 12} "Noll testified that he questioned Parrish about a recent burglary in a second floor interview room at the police department. Although the door to the room had a lock on it, to Noll's knowledge, the door remained unlocked the entire time that Parrish was inside. Noll testified that Parrish had been told that he was free to leave at any time and that he in fact was free to leave up until he admitted having knowledge of a burglary.
 {¶ 13} "Noll testified that at that point, at approximately 11:34 a.m. on May 12, 2004, he informed Parrish that he was no longer free to leave, advised him of his rights and had him execute the police department's standard pre-interview form. Parrish initialed each Miranda right on the pre-interview form indicating that he understood them and signed the waiver of those rights. At some point, Parrish made a written statement. Noll was uncertain whether it was before or after his rights had been read.
 {¶ 14} "Parrish was placed in a holding cell at the Huber Heights jail while Noll obtained a search warrant for Cauley's home. According to Noll, one of the reasons that they wanted to hold Parrish was because they did not want him to warn Cauley that they were coming to his house. Cauley's house was searched and the police told him that they wanted to talk to him about several burglaries in Huber Heights. Cauley's route to the interview room was through the jail, where he was able to see Parrish in his cell. His rights were read to him and he signed the pre-interview form at approximately 5:05 p.m. on May 12, 2004. Cauley made a written statement and showed Detective Noll and Colvin several houses that he claimed he and/or Parrish burglarized. According to Noll, Cauley told him that he was scared to be in the jail with Parrish and asked if he could return to the police department the next day to be arrested. He was given permission and did so. Cauley was questioned by Noll the day he turned himself in and made a second written statement. Cauley was not re-advised of rights at that time. According to Noll, Cauley volunteered to take the detectives to a house from which he and Parrish had stolen a 57 Magnum gun.
 {¶ 15} "At approximately 6:00 p.m. on May 12, 2004, Parrish was arrested. Colvin testified that he interviewed Parrish around 8:00 or 9:00 p.m. that night. Prior to this, he had generated a photospread using the system connected to the Montgomery County jail. Colvin testified that he input the parameters of Parrish's physical characteristics and chose photos that were close. He then took the photo spread to the home of Carol Leep, the victim of a robbery that occurred on May 29, 2003. According to Colvin, he read Leep the instructions for the photospread, and she identified Parrish as the person she had seen in her home.
 {¶ 16} "Colvin testified that when he interviewed Parrish that night, he asked Parrish if he had been advised of rights and Parrish answered yes. Noll also testified that Colvin had asked him if Parrish had been Mirandized. Colvin did not Mirandize Parrish a second time. Colvin also testified that he did not know whether Parrish had been given any food since his arrival at the police station that morning, and that Parrish had changed into jail clothing. Parrish made a second written statement, and he was transported to the Montgomery County jail between 10:00 and 11:00 p.m. on May 12th."
 {¶ 17} The procedural safeguards prescribed by Miranda
apply when persons are subjected to custodial interrogation.Miranda v. Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602,16 L.Ed.2d 694; State v. Hall (August 26, 2005), Greene App. NO. 04-CA-86, 2005-Ohio-4256. Whether a person is in custody for purposes of Miranda depends on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. California v. Beheler (1983), 463 U.S. 1121,103 S.Ct. 3517, 77 L.Ed.2d 1275; Hall, supra. The relevant inquiry is how a reasonable person in the suspect's position would have understood his situation. Berkemer v. McCarty
(1984), 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317.
 {¶ 18} Defendant voluntarily agreed to go to the police station to speak with police about these burglaries. Defendant was not under arrest, handcuffed, or restrained in any way at that time. Although the door to the interview room where the questioning took place was closed, it was not locked, and Detective Noll told Defendant that he was free to leave anytime, and that he was not under arrest. Defendant said he understood that. It was only after Detective Noll learned further information implicating Defendant in some of the burglaries that Detective Noll told Defendant that he was no longer free to leave.
 {¶ 19} Up to the point in time when Defendant was told he was not free to leave, Defendant had not been restrained to a degree associated with a formal arrest. He was therefore not in custody for purposes of Miranda until that time. Prior Miranda
warnings were not required, and Defendant's prior oral statements to Detective Noll, if any, were admissible absent Miranda
warnings. The trial court did not err in failing to suppress evidence of Defendant's oral statement.
 {¶ 20} Detective Noll testified that after he told Defendant that he was no longer free to leave, he advised Defendant of hisMiranda rights via a pre-interview form. Defendant indicated that he understood each of his rights and was willing to waive them and talk with police, and he signed the waiver of rights portion of the form. Detective Noll testi-fied that he next asked Defendant to write out what he had orally stated to police. Defendant then provided a written statement. Detective Noll also testified, however, that he was uncertain whether Defendant provided his written statement before or after being given hisMiranda rights.
 {¶ 21} Upon a defendant's motion to suppress evidence of statements made to police that were products of custodial interrogation, it becomes the state's burden to prove by a preponderance of the evidence that the statements were preceded by the defendant's waiver of his Miranda rights. Colorado v.Connelly (1986), 479 U.S. 15, 107 S.Ct. 515, 93 L.Ed.2d 473. In that connection, the credibility of the witnesses who testify during a suppression hearing is a matter for the trier of fact to determine, and its determination will not be disturbed by the reviewing court absent an abuse of discretion. State v. Broom
(1988), 40 Ohio St.3d 277.
 {¶ 22} Detective Noll's testimony concerning whetherMiranda warnings were given before or after Defendant provided a written statement is equivocal. On the motion to suppress that was filed, before the trial court reasonably could find that the written statement is admissible in evidence, the court was required to find that Miranda warnings preceded the statement. The court made no such finding. Instead, in its findings of fact, the court found only that "Noll was uncertain whether it was before or after his rights had been read." The court nevertheless overruled Defendant's motion to suppress evidence.
 {¶ 23} On this record, we necessarily find that the trial court erred when it overruled Defendant's motion to suppress evidence of his written statement, absent a positive finding that it was preceded by proper Miranda warnings. The case will be remanded to the trial court in order for the court to find whether or not such warnings were given and his Miranda rights were waived.
 {¶ 24} After Defendant gave his written statement to Detective Noll, he was placed in the jail at 12:15 p.m., and he remained there while police located and interviewed the co-defendant, Aaron Cauley. During this time, Detective Colvin prepared a photospread that contained a photograph of Defendant. Colvin showed it to one of the burglary victims, Carol Leep. She identified Defendant as the man she had seen inside her home. At around 8:00-9:00 p.m., Detective Colvin interviewed Defendant in the booking area of the jail. Detective Colvin did not re-advise Defendant of his Miranda rights. Detective Colvin had been told by Detective Noll that Defendant was previously advised of his rights and that he waived them. Detective Colvin asked Defendant if he recalled his rights from having been advised about them earlier, and Defendant responded: "yes." Approximately nine hours had elapsed between Defendant's being advised of his rights by Detective Noll and this interview by Detective Colvin, which produced a second written statement given by Defendant.
 {¶ 25} Defendant argues that Detective Colvin should have re-advised him of his Miranda rights before questioning him, because the Miranda warnings given to Defendant by Detective Noll at 11:34 a.m. had become too stale to permit Detective Colvin to question him some nine hours later. In State v.Condon (Nov. 3, 2000), Darke App. No. 1510, this court observed:
 {¶ 26} "Because custodial interrogation is inherently coercive, incriminating statements which are the product of such questioning are not admissible unless Miranda warnings precede that questioning. Miranda v. Arizona (1966), 384 U.S. 436. Those warnings are indispensable in overcoming the pressures of custodial interrogation and insuring that the individual knows he is free to exercise his right to remain silent at that time. Id. This suggests that the warnings should be sufficiently proximate in time and place to any interrogation so as to preserve the relief from custodial pressures that the warnings are intended to create. State v. Butler (September 18, 1998), Montgomery App. No. 16852, unreported. When an individual to whom prior Miranda warnings were properly given is subsequently interrogated without being re-advised of his Miranda rights, the critical issue is whether that individual nevertheless remained aware of his rights at the time of the subsequent interrogation. Butler, supra. In making that determination, courts must consider the totality of the circumstances, including:
 {¶ 27} "(1) [T]he length of time between the giving of the first warnings and subsequent interrogation, * * * (2) whether the warnings and the subsequent interrogation were given in the same or different places, * * * (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers, * * * (4) the extent to which the subsequent statement differed from any previous statements; * * * [and] (5) the apparent intellectual and emotional state of the suspect.State v. Roberts (1987), 32 Ohio St.3d 225, 232."
 {¶ 28} Defendant's Miranda warnings were given at or about the noon hour by Detective Noll, and Defendant acknowledged at that time that he understood those warnings. Some nine hours later, Defendant was interrogated by Detective Colvin without being fully re-advised of his Miranda rights. Although Defendant was not then given fresh Miranda warnings, Detective Colvin asked Defendant if he recalled being advised of his rights and if he understood them. Defendant responded, "yes" to both questions. We conclude that this nine hour time lapse is not so great as to cause Defendant to forget or lose an understanding of his rights. Condon, supra.
 {¶ 29} Although the officer who advised Defendant about his rights and initially questioned him (Detective Noll), is not the same officer (Detective Colvin) who subsequently questioned Defendant at 8:00-9:00 p.m., both of those officers were present together for at least a portion of each interview with Defendant.
 {¶ 30} The first interview was conducted at the police station, and the subsequent interview occurred in the booking area of the jail. Both interviews concerned the same subject, a series of burglaries in and around Huber Heights. Furthermore, there is nothing to indicate that Defendant's intellectual or emotional state was such as to impair his ability to understand his rights at the time of either interview.
 {¶ 31} On the totality of these facts and circumstances, the evidence fails to demonstrate that Defendant was unaware of hisMiranda rights when questioned by Detective Colvin between 8:00-9:00 p.m. Defendant's second written statement that he gave to Detective Colvin was admissible, and the trial court did not err in failing to suppress that evidence.
 {¶ 32} The first assignment of error is overruled, except with respect to the claim concerning Defendant's first written statement, which will be the subject of a remand for findings.
 SECOND ASSIGNMENT OF ERROR {¶ 33} "AN IDENTIFICATION THAT IS MADE FROM AN IMPERMISSIBLY SUGGESTIVE PHOTOGRAPHIC IDENTIFICATION PROCEDURE MUST BE SUPPRESSED."
 {¶ 34} Defendant argues that the trial court erred in failing to suppress Carol Leep's pretrial identification of him because the procedure used by police, a photographic lineup, was unfairly suggestive and the resulting identification was unreliable.
 {¶ 35} When a witness has been confronted with a suspect before trial, due process requires a court to suppress evidence of the witness's identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances. State v. Murphy, 91 Ohio St. 3d 516, 534, 2001-Ohio-112. The defendant must first show that the identification procedure was unduly suggestive. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure. State v. Wills
(1997), 120 Ohio App.3d 320, 324. If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. Id., at 325; State v. Beddow
(March 20, 1998), Montgomery App. Nos. 16197, 16198.
 {¶ 36} In arguing that the photographic lineup used in this case was unfairly suggestive, Defendant claims that the background of his picture is darker than the others, causing it to stand out. The photospread consists of six subjects, all white males of similar age, with dark hair and eyes. The instructions for viewing the photospread which Detective Colvin read verbatim to Carol Leep indicate that hairstyles, beards and moustaches may be easily changed, and that the witness should not pay any attention to differences in the type or style of photograph. A photo array is not unfairly suggestive due solely to different backgrounds. See: State v. Nelson (June 19, 2003), Cuyahoga App. No. 81558, 2003-Ohio-3219; State v. Browner (May 31, 2001), Scioto App. No. 99CA2688, 2001-Ohio-2518.
 {¶ 37} Detective Colvin testified regarding the computerized system which accesses a database of jail photographs that he used to create the photographic lineup in this case. Using Defendant's physical features and identifiers, Detective Colvin entered that information into the computer which then generated several photographs of individuals similar in appearance to Defendant. Detective Colvin then selected those photos that he thought most closely resembled Defendant, and the computer randomly arranged the photos into a six picture photospread. We have previously held that this computerized method of creating photospreads avoids most potential unfairness and almost any claim that the lineup was suggestive. State v. Beckham (July 18, 2003), Montgomery App. No. 19544, 2003-Ohio-3837; State v. Beddow
(March 20, 1998), Montgomery App. Nos. 16197 and 16198. That is also true in this case.
 {¶ 38} Furthermore, the manner in which this photographic lineup was presented to Carol Leep was not suggestive. Detective Colvin read the instructions for viewing the photospread verbatim to Ms. Leep, and he did not suggest or in any way influence Leep as to whom she should select, if anyone. Leep identified photograph number 6, Defendant's, as depicting the man she saw inside her home. Contrary to the suggestion in Defendant's brief, it was not until after Ms. Leep had identified Defendant that Detective Colvin then told her she had picked out a suspect in the several burglaries he was investigating. (T. 97).
 {¶ 39} This photographic lineup and the manner in which it was presented to the eyewitness was not unduly suggestive. Accordingly, there is no need to further inquire into the reliability of the identification by Leep. Beckham, supra. The trial court did not err in refusing to suppress the pretrial identification.
 {¶ 40} The second assignment of error is overruled.
 {¶ 41} Having sustained the first assignment of error, in part, with respect to the written statement that Defendant gave Detective Noll, we will reverse Defendant's conviction and sentence, and remand the case for further proceedings.
Wolff, J. And Fain, J., concur.