OPINION
{¶ 1} Defendant-appellant, Keith McGhee, appeals from his conviction and sentence on two counts of aggravated robbery.
 {¶ 2} This appeal involves two robberies of two separate Subway restaurants located at 7321 Poe Avenue in Vandalia and 663 Lyons Road in Centerville. On November 28, 2004, at approximately 7:15 p.m., a male wearing a winter jacket robbed the Subway restaurant at 7321 Poe Avenue. Upon entering the restaurant, the robber asked Errol Randolph, the employee on duty, if anyone else was there and then demanded money from the safe, the cash register, and Randolph's pockets. The robber stood face-to-face across the counter from Randolph and displayed a weapon that Randolph believed was a shotgun. The robber did not wear a mask and the store was well lit. The robbery lasted approximately thirty seconds.
 {¶ 3} Randolph described the robber to police as being a black male, approximately 5'11" tall, and weighing 160-170 pounds. On November 29, 2004, Vandalia Police Sergeant Gary Jackson selected photographs of a suspect and other males with similar physical features as the suspect from the jail computer database. Sergeant Jackson used the computer system to create a photospread for Randolph to view. Randolph viewed the photospread, but did not identify any of the individuals in the photographs as the robber.
 {¶ 4} On December 3, 2004, the Montgomery County Sheriff's Office contacted Sergeant Jackson and provided him with information regarding additional suspects relating to the Poe Avenue Subway robbery. Sergeant Jackson used the computer system to create two more photospreads, one containing a picture of Defendant along with pictures of individuals with similar physical features as Defendant, and one containing a picture of Defendant's brother, Aubrey Carter, along with pictures of individuals with similar physical features as Carter. Randolph took approximately twenty seconds to identify Defendant as the man who robbed the Poe Avenue Subway. Randolph did not recognize any of the other individuals contained in the two photospreads.
 {¶ 5} On December 1, 2004, at a little after 8:00 p.m., a male robbed the Subway restaurant at 663 Lyons Road. Ashish Patel, the owner of the Lyons Road Subway, and Lance Neal, an employee of Patel, were the only individuals in the store when the robber entered. The robber asked Patel if he could use the restroom. When the robber returned from the restroom, he began asking Patel some questions. Neal was in the back of the restaurant and saw the robber talking to Patel on a screen that had a live feed from cameras in the front of the store. Neal went out to the front of the store to see what was happening. The robber pulled out a gun, pointed it at Neal, and demanded money. However, a customer entered the restaurant and the robber ducked into the hallway leading to the restroom.
 {¶ 6} Neal and Patel served the customer, who was a regular patron of the Lyons Road Subway. The customer suspected that a robbery was in progress because of the way Neal and Patel acted. Consequently, she waited outside near the restaurant to see what happened. After the customer left the restaurant, the robber demanded money from Neal, who was face-to-face with the robber on the opposite side of the counter. The robber then took the money, left the store, and got into the passenger side of a dark red sedan. The customer, who was waiting outside, wrote down the license plate number of the sedan, which was registered to Defendant's wife. At the time of both robberies, Defendant and his wife had been separated for approximately three years. When the police arrived, Neal identified the robber as a black male, and estimated that the robber was approximately 5'6" tall and weighed 120 pounds. Patel estimated that the robber was 5'5" tall and weighed 120 pounds.
 {¶ 7} Later that evening, an officer stopped the car with the license plate number provided by the Subway customer. A driver and passenger were in the car. The driver of the car, Defendant's brother, Carter, fled by foot, but the officer eventually caught and arrested him. The officer did not get a look at who was in the passenger seat of the car, and when he returned to the car with Carter the passenger was gone.
 {¶ 8} On December 2, 2004, Detective Hutchinson showed Neal a photospread that contained a picture of Defendant, along with other individuals with similar physical features. Detective Hutchinson prepared the photospread through the use of a computer system that uses the jail database to find pictures of individuals with similar physical features. After viewing the photospread for less than thirty seconds, Neal stated that he was 99% sure that the photograph of Defendant represented the man who robbed the Lyons Road restaurant. The 1% uncertainty was a result of Neal's belief that the length of Defendant's hair at the time of the robbery was longer than Defendant's hair in the photograph.
 {¶ 9} Defendant was arrested and indicted on two counts of aggravated robbery. Defendant filed a motion to suppress the testimony of Randolph and Neal identifying Defendant as the robber. The trial court overruled the motion. On September 30, 2005, a jury convicted Defendant of two counts of aggravated robbery. On November 1, 2005, the trial court sentenced Defendant to a total of seven years of incarceration and five years of post-release control. Defendant filed a timely notice of appeal on November 17, 2005.
FIRST ASSIGNMENT OF ERROR
 {¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION TO SUPPRESS EVIDENCE."
SECOND ASSIGNMENT OF ERROR
 {¶ 11} "THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF AGGRAVATED ROBBERY."
 {¶ 12} Defendant's first two assignments of error will be addressed together because they involve related arguments. In his first assignment of error, Defendant argues that the photospreads shown to Randolph and Neal were unduly suggestive and unreliable. In particular, Defendant contends that the photospreads did not accurately reflect Defendant's appearance at the time of year when the robberies occurred and that Randolph and Neal were unable to provide a specific description of Defendant. Similarly, in his second assignment of error, Defendant argues that there was insufficient evidence to convict him because he was misidentified by Randolph and Neal, who gave inaccurate physical descriptions of Defendant.
 {¶ 13} Defendant argues that the trial court erred in failing to suppress the pretrial identifications of him by Randolph and Neal because the procedure used by police, a photographic lineup, was unfairly suggestive and the resulting identification was unreliable. When a witness has been confronted with a suspect before trial, due process requires a court to suppress evidence of the witness' identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable, under the totality of the circumstances. State v. Murphy, 91 Ohio St.3d 516, 534,2001-Ohio-112.
 {¶ 14} Defendant must first show that the identification procedure was unnecessarily suggestive. To warrant suppression, the accused bears the burden of showing that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification".Neil v. Biggers (1972), 409 U.S. 188, 199, 93 S. Ct. 375,34 L.Ed.2d 401. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure. State v. Parrish, Montgomery App. No. 21091,2006-Ohio-2677, ¶ 35 (citation omitted). If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. Id. (citations omitted).
 {¶ 15} Detective Hutchinson and Sergeant Jackson testified regarding their use of the computerized system that accesses a database of jail photographs. They used this system to create the photographic lineups that were presented to Randolph and Neal. Detective Hutchinson and Sergeant Jackson entered Defendant's physical features and identifiers into the computer system, which then generated several photographs of individuals similar in appearance to Defendant. Detective Hutchinson and Sergeant Jackson selected those photos that they thought most closely resembled Defendant, and the computer randomly arranged the photos into a photospread.
 {¶ 16} The trial court reviewed the photospreads and found that they were not impermissibly suggestive. Defendant does not explain how the photospreads shown to Randolph and Neal were unduly suggestive. "It is the duty of defendant, not this Court, to develop a specific argument to support his assigned error."State v. Brown (Aug. 19, 1998), Summit App. No. 18591. Moreover, "[w]e have previously held that this computerized method of creating photospreads avoids most potential unfairness and almost any claim that the lineup was suggestive." Parrish,2006-Ohio-2677, at ¶ 37 (citations omitted). Because the photospreads shown to Randolph and Neal were not shown to be impermissibly suggestive, the trial court did not err in overruling Defendant's motion to suppress.
 {¶ 17} Defendant also argues that there was insufficient evidence to convict him because he was misidentified by Randolph and Neal, who gave inaccurate physical descriptions of Defendant. We disagree. The descriptions of Defendant by Randolph and Neal did not differ significantly from the descriptions of Defendant provided by individuals presumably more familiar with Defendant's physical features.
 {¶ 18} The record does not contain any definitive evidence establishing Defendant's exact height and weight. Rather, there are estimates of Defendant's height and weight provided by Defendant's civil attorney, Lawrence White, and Defendant's brother, Aubrey Carter. Both of these lay witnesses estimated Defendant's height at 5'8", but they differed regarding their estimates of Defendant's weight. White approximated Defendant's weight at 145-150 pounds while Carter opined that Defendant weighed 130 pounds.
 {¶ 19} Randolph testified that the robber wore a baggy coat and that he believed that the robber was about 160 pounds and about 5'11". Neal testified that he believed that the robber was 5'6" and about 120 pounds. Similarly, Ashish Patel, the owner of the Lyons Road Subway who also witnessed the robbery, testified that the robber was approximately 5'5" and 120 pounds. The testimony of the eyewitnesses are not far off from the estimates provided by White and Carter. Indeed, even White and Carter, who obviously had the advantage of knowing and seeing Defendant on a number of occasions, differed in their estimates of Defendant's weight.
 {¶ 20} Further, Defendant's height and weight were irrelevant to the eyewitnesses' pre-trial identifications of Defendant, which were based on photographs that do not show Defendant's height and weight. Randolph and Neal were face-to-face with Defendant in the two robberies and there were no obstructions to their seeing Defendant's face. Neal testified that Defendant's hair may have been different at the time of the robbery than in his photograph, but Neal was 99% sure that Defendant committed the robbery at the Lyons Road Subway restaurant. Moreover, both Randolph and Neal made in-court identifications of Defendant as the robber of their respective stores. Given these facts, we find that there was sufficient evidence to convict Defendant of two counts of aggravated robbery.
 {¶ 21} Defendant's first and second assignments of error are overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 22} "THE JURY VERDICT SHOULD BE REVERSED BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."
 {¶ 23} "To reverse a jury verdict as being against the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice." State v. Sherls, Montgomery App. No. 18599, 2002-Ohio-939 (citation omitted). "`The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. (citation omitted). In reviewing the weight of the evidence, the witnesses' credibility and the weight to be given their testimony are matters primarily for the trier of fact since the trier of fact is in the best position to judge the witnesses' credibility by observing their demeanor. Id. (citation omitted).
 {¶ 24} Defendant argues that the jury verdict was against the manifest weight of the evidence because Defendant's brother admitted to the Lyons Road robbery, Defendant was with his girlfriend at the time of the two robberies, and there were no fingerprints that linked Defendant to either Subway store that was robbed. We disagree.
 {¶ 25} Defendant's brother, Carter, testified via videotape that he drove the getaway car from the Lyons Road Subway robbery and that Defendant had nothing to do with the Lyons Road Subway robbery. According to Carter, a man named Charles Millinder was the individual who robbed the Lyons Road Subway restaurant. However, Carter's testimony is irreconcilable with the testimony of Neal. Clearly, the jury rejected Carter's testimony as not credible.
 {¶ 26} There are a number of reasons why the jury could reasonably have found Carter's testimony less credible than Neal's testimony. First, Carter was potentially biased in favor of protecting his brother. Second, Detective Ward testified that Carter had lied regarding his social security number and his name. Third, according to Detective Ward, Carter failed to mention Millinder at the time of his arrest or during the interview after his arrest. Fourth, Carter admitted that he had smoked marijuana on the day that he was arrested, and that he was intoxicated when he was arrested and when he was interviewed by Detective Ward. Given these facts, we cannot find that the jury erred in rejecting Carter's testimony in favor of the eyewitness testimony.
 {¶ 27} Also, Defendant's girlfriend testified as an alibi on behalf of Defendant. Clearly, her testimony is irreconcilable with the eyewitness testimony of Randolph and Neal. Defendant's girlfriend had difficulty remembering certain dates relating to when Defendant changed his hairstyle. Moreover, a jury reasonably could have found that Defendant's girlfriend was potentially biased in Defendant's favor. In short, the jury reasonably could have credited the independent testimony of the eyewitnesses over the testimony of Defendant's girlfriend.
 {¶ 28} Finally, Defendant argues that the lack of his fingerprints at the scene of the two robberies requires a reversal of the jury verdict. His argument is without merit. The police were unable to identify any of the fingerprints they found at the crime scenes. The testimony was clear that it is difficult to pull fingerprints from areas that are used by many different individuals throughout the day. The inability to positively identify any of the fingerprints from the crime scenes does not necessarily mean that Defendant did not commit the two robberies. This is especially true, where, as here, two separate eyewitnesses who had a close, clear view of the robber identified Defendant as the individual who robbed their respective Subway restaurants.
 {¶ 29} Defendant's third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 30} "THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO A JURY TRIAL BY MAKING A FACTUAL DETERMINATION TO IMPOSE A SENTENCE BEYOND THE STATUTORY MINIMUM."
 {¶ 31} Defendant argues that he was unconstitutionally sentenced to a sentence beyond the minimum provided for by statute, as held in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. We agree.
 {¶ 32} Defendant was convicted of two counts of aggravated robbery, R.C. 2911.01(A)(1), with a three year firearm specification. Aggravated robbery is a first degree felony, R.C.2911.01(C), for which the minimum prison term is three years. R.C. 2929.14(A)(1). The trial court, having found that shorter terms would demean the seriousness of his offenses and not adequately protect the public, imposed concurrent, four year sentences for each of Defendant's aggravated robbery offenses, pursuant to R.C. 2929.14(B).
 {¶ 33} In Foster, the Supreme Court held R.C. 2929.14(B) unconstitutional when applied on the basis of a finding not made by a jury or a matter admitted by the defendant. Foster applied the holding of Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403. Because the sentences the court imposed on Defendant were instead based on findings made pursuant to R.C. 2929.14(B) by the court, the sentences violate the rule of Foster and Blakely. Further, because Defendant's appeal was pending when Foster was decided, the sentences imposed must be vacated and the case remanded for resentencing. Foster, at ¶ 104.
 {¶ 34} The State argues that Defendant waived the Blakely
error by not objecting to the sentences the trial court imposed as violative of Blakely. We believe that application of the waiver rule was implicitly rejected in Foster, at ¶ 104.
 {¶ 35} Defendant's fourth assignment of error is sustained. The sentences imposed by the trial court will be vacated and this case remanded for re-sentencing in accordance with Foster.
Fain, J. and Donovan, J., concur.