OPINION
{¶ 1} Defendant, Timothy Coleman, appeals from orders dismissing his successive post-conviction petition, motion for new trial and motion for relief from judgment, all without a hearing. In these actions, Coleman sought to vacate his death penalty conviction.
 {¶ 2} On the evening of January 2, 1996, Melinda Stevens was shot and killed in an alley behind the Riddle's Ribs restaurant in Springfield. Following a jury trial in February 1997, Defendant Timothy Coleman was convicted of aggravated murder and an accompanying death penalty specification. The common pleas court sentenced Defendant to death. Defendant's conviction and death sentence was subsequently affirmed on direct appeal. Statev. Coleman, 85 Ohio St.3d 129, 1999-Ohio-258; Coleman v. Ohio
(1999), 528 U.S. 954.
 {¶ 3} On November 27, 1997, Defendant filed a petition for post-conviction relief, R.C. 2953.21. The trial court overruled that petition without a hearing on May 31, 2001. On direct appeal we affirmed the trial court's dismissal of Defendant's post-conviction petition. State v. Coleman (October 4, 2002), Clark App. No. 2001-CA-42, 2002-Ohio-5377. The Ohio Supreme Court declined jurisdiction. State v. Coleman (2003),98 Ohio St.3d 1478.
 {¶ 4} On January 24, 2002, Defendant filed a second round of actions including a motion for relief from judgment, Civ.R. 60(B), a motion for a new trial, Crim.R. 33(A), and a successive petition for post-conviction relief, R.C. 2953.23. These requests for relief presented the same two claims: (1) a primary claim of actual innocence based upon newly discovered evidence showing that another person, William Sapp, had confessed to murdering Stevens; and, (2) a subordinate claim that the State violated the requirements of Brady v. Maryland (1963), 373 U.S. 83, when it failed to disclose exculpatory evidence indicating Sapp was responsible for Stevens' murder. The trial court found that these claims lacked merit, and on July 21, 2004, the court denied the relief requested in each of Defendant's actions without a hearing.
 {¶ 5} Defendant timely appealed to this court.
First Assignment of Error
 {¶ 6} "The trial court erred when it dismissed Coleman's successor post-conviction petitions, new trial motions, and Rule 60(b) motion."
Third Assignment of Error
 {¶ 7} "The trial court erred in dismissing appellant's post-conviction petition where he presented sufficient operative facts to merit an evidentiary hearing and discovery."
 {¶ 8} Initially, Defendant complains that when the trial court reviewed his two claims it did not apply the proper standards of review applicable to each of his various causes of action. We are not persuaded by this argument.
 {¶ 9} With respect to Defendant's successive post-conviction petition, the trial court could not consider that petition unless Defendant demonstrated that he was unavoidably prevented from discovering the facts upon which he relies as grounds for his claim for relief, and also demonstrated by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found Defendant guilty. R.C.2953.23(A)(1).
 {¶ 10} With respect to Defendant's motion for a new trial, Crim.R. 33(A)(6) provides that a new trial may be granted when new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial, or when the prosecutor commits misconduct, Crim.R. 33(A)(2). See also R.C. 2945.79(F) and (B). In order to warrant a new trial based upon newly discovered evidence, Defendant must show a strong probability that the new evidence will change the result of the trial, that the evidence was discovered since the trial, the evidence could not have been discovered before trial in the exercise of due diligence, the evidence is material to the issues, the evidence is not cumulative of former evidence, and the evidence does not merely impeach or contradict the former evidence. State v. Hawkins
(1993), 66 Ohio St.3d 339.
 {¶ 11} Civ.R. 60(B)(2) provides that the court may relieve a party from a final judgment when there is newly discovered evidence which in the exercise of due diligence could not have been discovered in time for trial. The same relief is available on a showing of misconduct by an adverse party per Civ.R.60(B)(3). To prevail on his motion for relief from judgment, Defendant Coleman had the burden to demonstrate that he has a meritorious defense to present, that he is entitled to relief under Civ.R. 60(B)(2) or (3), and that he made his motion within a reasonable time. GTE Automatic Electric, Inc. V. ARCIndustries (1976), 47 Ohio St.2d 146.
 {¶ 12} In the context of Defendant's primary claim of newly discovered evidence which portrays his actual innocence, we perceive no material distinctions in the standards applicable to successive post-conviction petitions, motions for new trials and motions for relief from judgment. In any event, despite the different procedural vehicles used or how the claim for relief is styled, if in substance the motion is a petition for post-conviction relief, it should be treated as such. State v.Talley (January 30, 1998), Montgomery App. No. 16479. Despite the various procedural vehicles used by Defendant, his multiple post-conviction causes of action are all in substance the same; a successive petition for post-conviction relief based upon a claim of newly discovered evidence of actual innocence.
 {¶ 13} R.C. 2953.21 governs post conviction relief and provides, in pertinent part:
 {¶ 14} "Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. * * *
 {¶ 15} "* * * Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner[.] * * *
 {¶ 16} "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing[.] * * *" R.C 2953.21(A)(1), (C), and (E).
 {¶ 17} R.C. 2953.21 confers a conditional right to a hearing. A petitioner has the initial burden to submit with the petition evidentiary documents containing operative facts sufficient to demonstrate substantive grounds for relief that merit a hearing.State v. Jackson (1980), 64 Ohio St.2d 107, 111; State v.Kapper (1983), 5 Ohio St.3d 36, 38; State v. Pankey (1981),68 Ohio St.2d 58, 59. A hearing is not required unless there is a showing that substantive grounds for relief exist. State v.Moreland (Jan. 7, 2000), Montgomery App. No. 17557. Broad conclusory allegations are insufficient, as a matter of law, to require a hearing. Id. A petitioner is not entitled to a hearing if his claim for relief is belied by the record and is unsupported by any operative facts other than Defendant's own self-serving affidavit or statements in his petition, which alone are legally insufficient to rebut the record on review. Kapper,supra; State v. Vanderpool (Feb. 12, 1999), Montgomery App. No. 17318.
 {¶ 18} Defendant's primary claim for relief is that he is actually innocent of the murder of Melinda Stevens. Defendant claims that William Sapp, who was convicted and sentenced to death for an unrelated double murder of two girls in Springfield, is the actual killer of Stevens. Defendant's primary support for this claim is an affidavit executed by Sapp on August 3, 2001, wherein Sapp admits killing Melinda Stevens behind Riddles Ribs near Pleasant Street, in Springfield. Sapp describes what Stevens was wearing, the type of gun he used, the approximate time of the shooting, and the type of beer he had finished drinking just before shooting Stevens. Sapp further avers that when he was arrested and interviewed by Springfield police about the other murders of two girls in Springfield, which occurred in April 1997, he told police at that time that he had killed Melinda Stevens.
 {¶ 19} As additional support for his claim of actual innocence, Defendant submitted a copy of a letter Sapp wrote to Una Timmons sometime after Sapp was convicted and sentenced in an unrelated case in 1996 for Kidnapping, Attempted Rape and Felonious Assault offenses in which Timmons was the victim. The letter was in the possession of the State. The date the letter was written is unknown, but a newspaper article was published on July 14, 1998 about the letter. In the letter Sapp threatens to harm Timmons because she testified against him at trial. In an effort to convince Timmons that he was serious about his threats, Sapp reminded Timmons of some of his other crimes including "killing your friend over off of Pleasant." Defendant Coleman claims that the reference is reasonably construed to refer to Melinda Stevens, and that the assertion corroborates Sapp's later claim in his affidavit that he killed Stevens.
 {¶ 20} In response to Defendant's claim of actual innocence, the State filed transcripts of a recorded interview between Springfield police and William Sapp which took place on June 18, 2002, after the underlying actions were filed. During that interview, Sapp completely recanted the statements in his previous affidavit and he denied that he killed Melinda Stevens or ever told police that he had done so. According to Sapp, Defendant Coleman's attorney wrote out the affidavit and he simply signed it. Sapp also indicated in that interview that his reference in the Timmons letter to someone he killed "over off of Pleasant" was meant to indicate Gloria White, not Melinda Stevens.
 {¶ 21} A trial court may not entertain a successive post-conviction petition unless Defendant demonstrates that he was unavoidably prevented from discovery of the facts upon which he relies to present his claim for relief. R.C. 2953.23(A)(1)(a). A similar requirement is imposed for obtaining a new trial based upon newly discovered evidence. Crim.R. 33(A)(6). On that point, the trial court concluded that Defendant failed to demonstrate that with the exercise of due diligence he could not have discovered this new evidence of actual innocence upon which his claims for relief are based, and that he failed to demonstrate that he acted diligently in presenting his claim after discovering this new evidence. We disagree.
 {¶ 22} The record before us demonstrates that Defendant was diligent in investigating and presenting his claim of actual innocence once he learned William Sapp claimed responsibility for the murder of Melinda Stevens. The first indication Defendant had that someone else was claiming responsibility for killing Stevens was the letter Defendant received from Attorney Staughton Lynd dated July 21, 2001. In that letter, Lynd indicates that he was told that another prisoner on death row wished to confess publicly to the murder for which Defendant had been convicted. After receiving this letter, Defendant began his investigative efforts, which included examining the files and records pertaining to Sapp. That investigation yielded the letter Sapp wrote to Timmons.
 {¶ 23} Just two weeks after receiving the Lynd letter, Defendant procured the affidavit from Sapp, wherein Sapp claimed responsibility for the murder of Melinda Stevens. Defendant also sought, unsuccessfully, to perform polygraph examinations on Sapp and himself, but could not come to terms with officials of Mansfield Correctional Institute, where both men were held, on the conditions under which such tests would be administered. Defendant filed his post-conviction causes of action alleging actual innocence on January 24, 2002, just six months after receiving the Lynd letter and learning of Sapp's claim of responsibility. Throughout that time, Defendant was incarcerated. Defendant was diligent in presenting his current claim of actual innocence.
 {¶ 24} We now turn to the merits of Defendant's claim of actual innocence. A persuasive demonstration of actual innocence made after trial would render the execution of a defendant unconstitutional. Herrera v. Collins (1993), 506 U.S. 390, 418. Defendant's claim of actual innocence in this case is founded on the statements in Sapp's affidavit, which the trial court found lacks any credibility.
 {¶ 25} In reviewing petitions for post-conviction relief, a trial court may, in the exercise of its sound discretion, weigh the credibility of affidavits submitted in support of the petition in determining whether to accept the affidavit as true statements of fact. State v. Calhoun, 86 Ohio St.3d 279,1999-Ohio-102. That same doctrine also comfortably applies to affidavits submitted in support of a motion for a new trial based upon newly discovered evidence that is material to the defense. In assessing the credibility of affidavits, the trial court should consider all relevant factors, including:
 {¶ 26} "(1) whether the judge reviewing the post-conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." Calhoun, supra, at 285.
 {¶ 27} One or more of the Calhoun factors, to the extent that any of them apply, may be sufficient to justify a conclusion that an affidavit asserting information outside the record lacks credibility. Id.
 {¶ 28} The trial court's decision dismissing Defendant's successive post-conviction petition without a hearing was, in effect, a grant of summary judgment to the State contemplated by R.C. 2953.21(D). Although, ordinarily, in summary judgment proceedings the trial court cannot weigh and consider the credibility of evidentiary material such as affidavits, pursuant to Calhoun the trial court is permitted in post-conviction proceedings to weigh the credibility of affidavits submitted in support of a post-conviction petition, to a limited extent.
 {¶ 29} The trial court held that Defendant's claim of actual innocence is wholly without merit because it is founded upon Sapp's affidavit, which lacks any credibility. We find that in so holding the trial court did not abuse its discretion, as that term is defined by law, in rejecting Sapp's affidavit for lack of credibility. See: State v. Adams (1980), 62 Ohio St.2d 151. The court noted that Sapp is a convicted double murderer who is under a sentence of death and has nothing to lose by claiming responsibility for another murder. The timing of Sapp's affidavit also renders its validity suspicious, because it was prepared and notarized by Defendant's own attorney just two months after the trial court had denied Defendant's first post-conviction petition. The psychological report on Sapp prepared by Dr. Schmidtgoessling for use in his double murder case mentions Sapp's "chronic lying."
 {¶ 30} The Calhoun factors pertain to weaknesses or inconsistencies on the face of affidavits or the way in which they were procured, and permit the court to refer to the prior trial record to compare the averments in affidavits against the evidence that was offered. It is another matter to reject affidavits on the basis of information obtained after a petition or motion is filed. Therefore, we believe that Sapp's affidavit may not be rejected because he recanted its allegations in a subsequent interview with police officers on June 18, 2001. Such conflicts merit a hearing if a choice between competing versions is made. Nevertheless, the court had other, sound grounds to reject Sapp's affidavit.
 {¶ 31} Sapp's affidavit is inconsistent with the facts of Melinda Stevens' murder and contradicted by the overwhelming evidence of Defendant's guilt presented at trial. Sapp's claim that he was with Melinda Stevens minutes before he killed her is contradicted not only by Defendant himself, who admitted to police that he was with Stevens at Riddles Ribs moments before she was shot, but also by the testimony of Christopher Holtz, who saw Defendant and Stevens leave Riddles Ribs together and walk into the alley behind Riddles Ribs. Moments later, Holtz heard gunshots. Furthermore, no less than seven witnesses testified at Defendant's trial, his friends and jail buddies, about how Defendant bragged that he was going to kill Stevens for her role in his being arrested and charged with drug offenses, and then, after the fact, about how he had killed Stevens. Finally, in affirming Defendant's conviction and death sentence, the Ohio Supreme Court observed that nothing in the record suggests any killer other than Coleman, and such a claim is baseless.Coleman, supra, 85 Ohio St.3d at 134.
 {¶ 32} Importantly, the same judge that rejected Defendant's successive post-conviction claim of actual innocence also presided over Defendant's trial and was therefore very familiar with the evidence against him. Calhoun, supra. Based upon hearing all of the evidence at trial, and in accordance withCalhoun, the trial court could reasonably reject Sapp's affidavit for lack of credibility, as it did, because while the evidence at trial shows that Defendant had ample motive and opportunity to kill Stevens, Sapp's affidavit fails to believably portray either. In other words, when viewed in the context of the overwhelming evidence of Defendant's guilt, Sapp's declaration that he is responsible for killing Stevens is so improbable as to constitute no credible evidence.
 {¶ 33} Defendant has failed to submit evidentiary documents containing sufficient operative facts to demonstrate substantive grounds for relief on his claim of actual innocence, regardless of whether the claim is presented as a successive post-conviction petition, motion for new trial or motion for relief from judgment. The trial court did not abuse its discretion when it dismissed Defendant's successive post-conviction petition, motion for a new trial and motion for relief from judgment asserting an actual innocence claim without a hearing.
 {¶ 34} We now turn to the merits of Defendant's claim that the State committed a violation of the requirements of, Brady v.Maryland (1963), 373 U.S. 83, when it failed to disclose to Defendant's counsel exculpatory evidence that Sapp, and not Coleman, killed Melinda Stevens. That claim is supported by Sapp's affidavit, wherein Sapp claims that when Springfield police interviewed him in connection with the murder of two Springfield girls, which occurred on April 2 and 3, 1997, he told police at that time that he had killed Melinda Stevens. As further support for this claim, Defendant also relies on the letter Sapp wrote to Una Timmons, which was in the possession of the State and never turned over to defense counsel, wherein Sapp refers to killing someone "over off of Pleasant." Defendant claims that this is a reference to Melinda Stevens, and that it corroborates Sapp's claim in his affidavit that he killed Melinda Stevens.
 {¶ 35} As we previously discussed, the trial court properly rejected Sapp's affidavit because it lacks any credibility. As for the Timmons letter, it makes no specific reference to the murder of Melinda Stevens. It refers only to the killing of someone "over off of Pleasant."
 {¶ 36} In order to constitute a violation of due process, the evidence withheld from Defendant must be (1) favorable to the defendant and (2) material to guilt or innocence. Brady, supra.
Defendant's bare allegation that Sapp's reference in the Timmons letter to someone "over off of Pleasant" means Melinda Stevens is not evidence that supports that proposition. While the letter is certainly favorable to Defendant to the extent that it suggests Sapp was the perpetrator, given the vague, indefinite reference in the Timmons letter to someone Sapp had killed "over off of Pleasant," the jury would necessarily have had to speculate as to whether Sapp was referring to Melinda Stevens. Therefore, the letter is simply too indefinite in its nature to be material to Defendant's guilt or innocence with respect to the killing of Melinda Stevens. No Brady violation is demonstrated.
 {¶ 37} Defendant has failed to submit evidentiary documents that contain sufficient operative facts to demonstrate substantive grounds for relief, regardless of whether the claim is viewed as a successive post-conviction petition, motion for new trial or motion for relief from judgment. Therefore, the trial court properly dismissed Defendant's various post-conviction actions without a hearing.
 {¶ 38} The first and third assignments of error are overruled.
Second Assignment of Error
 {¶ 39} "The trial court errs when it summarily dismisses meritorious claims raised in new trial motions, successor post-convictions petitions, and Rule 60(b) motions without granting discovery."
 {¶ 40} Defendant argues that Ohio's post-conviction process is inadequate and does not comport with due process because it does not grant him the right to conduct discovery he claims is necessary to acquire the evidentiary documents needed to support the claims for relief he presented in his petition. We have previously addressed and rejected this same argument on multiple occasions. State v. Gapen (January 31, 2005), Montgomery App. No. 20454, 2005-Ohio-441; State v. Kinley (1999),136 Ohio App.3d 1; State v. Chinn (August 21, 1998), Montgomery App. No. 16764.
 {¶ 41} In State v. Franklin (May 17, 2002), Montgomery App. No. 19041, 2002-Ohio-2370, we stated:
 {¶ 42} "In his seventeenth claim for relief, Franklin argued that Ohio's post-conviction process is inadequate. We have held that the statute is not unconstitutional. See State v. Taylor
(June 29, 2001), Greene App. Nos. 2000 CA 77, 2000 CA 103, unreported.
 {¶ 43} "State post-conviction review is not a constitutional right. State v. Kinley (1999), 136 Ohio App.3d 1, 7,735 N.E.2d 921, 926, dismissed (2000), 88 Ohio St.3d 1444, 725 N.E.2d 284
(citation omitted). Thus, a petitioner for post-conviction relief receives no more rights than those granted by the post-conviction relief statute, R.C. 2953.21. Id., citing State v. Calhoun
(1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905, 909. Although R.C. 2953.21 does not grant a petitioner the right to conduct discovery, the statute is not unconstitutional because a defendant has no constitutional right to state post-conviction relief generally." Id., at ¶ 61. See also: State v. Bays
(June 20, 2003), Greene App. No. 2003CA4, 2003-Ohio-3234 at ¶ 20. The trial court did not err in failing to allow Defendant to conduct discovery with respect to his post-conviction proceedings.
 {¶ 44} The second assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J. And Fain, J., concur.