[Cite as *State v. Beavers*, 2012-Ohio-3711.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.  24671 |
| v. | : | T.C. NO.  94CR3052 |
| REUBIN J. BEAVERS | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___17th___ day of ___August___, 2012.

. . . . . . . . . .

CARLEY J. INGRAM, Atty. Reg. No. 0020084, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

WILLIAM F. OSWALL JR., Atty. Reg. No. 0080597, 810 Sycamore Street, Fifth Floor, Cincinnati, Ohio 45202
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}   Reubin Beavers appeals from a judgment of the Montgomery County

Court of Common Pleas, which denied his Motion for a New Trial. For the reasons that follow, the trial court's judgment will be reversed.

{¶ 2} The lengthy history of this case is relevant to a full understanding of the issue before us on this appeal. Moreover, our prior holdings are now the law of the case, by which we and the trial court are bound. As such, we will recount much of the procedural and substantive history, relying in part on our numerous prior judgments and decisions related to Beavers's conviction and his efforts to obtain a new trial.

{¶ 3} In 1995, Beavers was convicted by a jury of one count of felonious assault and two counts of shooting at or into a habitation. These convictions arose out of an incident in which Beavers was alleged to have fired shots into a house that was an illegal after-hours drinking and gambling establishment, or "boot joint"; one person inside the house was wounded. Beavers was sentenced to eighteen to twenty-eight years of imprisonment. We affirmed Beavers's conviction on appeal. *State v. Beavers*, 2d Dist. Montgomery No. 15265, 2000 WL 84557 (Jan. 28, 2000) ("*Beavers I*").[1]

{¶ 4} In 1996, Beavers filed his first petition for post-conviction relief, in which he argued, in part, that his trial counsel had been ineffective in failing to call Raney A. Mease as a witness, because Mease, who was allegedly an eyewitness to the shooting, would have testified that Beavers was not the shooter and that another person did the shooting. The

---

[1] Beavers's direct appeal, filed in 1995, was initially dismissed for failure to prosecute and was reopened in May 1998, when we were "obliged to agree with Beavers that he went without the effective assistance of appellate counsel for far too long a time." *State v. Beavers*, 2d Dist. Montgomery No. 15265 (Decision & Entry, Aug. 30, 2000). New appellate counsel was appointed when the case was reopened, and briefing of the issues on appeal began at that time. Due to these unusual circumstances, Beavers's direct appeal was resolved more than four years after his conviction.

trial court granted the State's motion for summary judgment on this petition. On appeal, we held that the trial court erred in granting the State's motion for summary judgment, because Mease "would have been the only defense witness, besides Beavers, himself, and [Braden] Carlisle, a convicted felon appearing in jail clothing, to claim to have seen the shooter and recognized that it was not Beavers." *State v. Beavers*, 2d Dist. Montgomery No. 16362, 1997 WL 797729, *3 (Dec. 31, 1997) ("*Beavers II*"). We stated that Mease's affidavit was "sufficient to create a genuine issue of material fact as to whether Beavers's trial attorney was ineffective, in the constitutional sense, for having failed to follow up with Mease as a potential witness." *Id.* Because we concluded that there was a reasonable probability that, were it not for this failure, the result of the trial would have been different, we reversed and remanded for an evidentiary hearing on Beavers's petition for post-conviction relief. *Id.* at *4.

{¶ 5} In October 1998, the trial court held an evidentiary hearing on Beavers's first petition for post-conviction relief; Mease, Beavers, and Beavers's trial attorney testified. Mease testified at the hearing that he was at the scene of the shooting at the boot joint, that he saw and "exchanged words with the shooter," and that he did not know the name of the shooter, but he was sure it was not Beavers, "as the shooter was heavier, shorter, darker complected and had more hair" than Beavers. Mease also testified that he (Mease) had fled the scene in a van, yelling to the police a few blocks away that a shooting was occurring at the specified location. However, Mease testified that he had not known Beavers at the time of the shooting or at the time of Beavers's trial, "but instead met him later in 1996 at the Ross Correctional Institution." *Id.* The police report regarding the shooting indicated the

presence of a "black male in a van," with no further description of the man or the vehicle. Neither Beavers nor his attorney knew anything about Mease's identity, and Mease never contacted the police to formally report what he had seen. *State v. Beavers*, 2d Dist. Montgomery No. 17949, 2000 WL 426164, *3 (April 21, 2000) ("*Beavers III*").

{¶ 6}     Based on this evidence, the trial court concluded that Beavers's trial counsel had not been ineffective, because counsel could not have reasonably been expected to determine Mease's identity at the time of trial from the police report's description of a "black male in a van." Thus, Beavers's first petition for post-conviction relief was overruled. We affirmed this judgment on appeal. *Id.* We noted, however, that Beavers could seek relief by filing a motion for new trial, pursuant to Crim.R. 33(A)(6), due to the existence of "very strong exculpatory new evidence which was not discovered prior to trial and which, from the facts set forth before us, could not with reasonable diligence have been discovered and produced at trial." We also stated that, but for our lack of jurisdiction, "we would be tempted ourselves to grant a motion by Beavers for a new trial." We observed that, "[s]ince the testimony of the only known eye witness to the incident completely exonerates Beavers, it is difficult to believe that Mease's testimony would not provide sufficient grounds for a different result to the trial." *Id.*

{¶ 7}     In July 2000, Beavers filed a Motion for New Trial. The parties agreed that no hearing on that motion was necessary, because Beavers could rely on Mease's testimony and the other evidence presented at the hearing on Beavers's petition for post-conviction relief.

{¶ 8}     In 2004, while Beavers's motion for a new trial was pending, he filed a

second petition for post-conviction relief. The trial court denied this petition, concluding that Beavers failed to meet the criteria for filing a second or successive petition for post-conviction relief, as set forth in R.C. 2953.23(A). Beavers appealed, and we affirmed the trial court's judgment. *State v. Beavers*, 2d Dist. Montgomery 20572, 2005-Ohio-1205 ("*Beavers IV*").

{¶ 9}    Beavers's motion for a new trial was not promptly reviewed by the trial court. While the motion was pending, the judge who had presided at Beavers's trial and later heard the testimony of Raney Mease in support of Beavers's first petition for post-conviction relief, retired from the bench. His successor, Hon. G. Jack Davis, eventually reviewed Beavers's motion. In May 2005, almost five years after it was filed, the trial court overruled Beavers's motion for a new trial without a hearing. The court concluded that Beavers failed to satisfy the requirements for obtaining a new trial based upon newly discovered evidence, because the testimony of a repeat felon such as Mease, which was elicited in a prison setting, did not disclose a strong probability that it would change the result if a new trial was granted, and because the testimony offered by Mease would be cumulative and would only impeach or contradict the evidence presented at trial. Beavers appealed from the denial of his motion for a new trial.

{¶ 10}    On appeal, we concluded that the trial court should have conducted a hearing on Beavers's motion for a new trial. We reasoned:

We have examined the files and records of the trial, the postconviction proceedings, and the new trial proceedings, as well as the previous appeals. Those records demonstrate that at trial defendant offered the testimony of

another convicted prison inmate, Braden Carlisle, the testimony of a friend, Virgil Meadows, and the testimony of defendant's niece, Rosalyn Cark. Carlisle and Meadows testified that they were present at the scene of the shooting and that defendant was not the shooter. Cark testified that defendant was with her when the shooting occurred, at a location nearby. The jury obviously rejected the testimony of those witnesses.

The state points out that Raney Mease has an extensive record of prior convictions and was serving time at Ross Correctional Institute for aggravated robbery, aggravated burglary, and involuntary manslaughter when he met defendant and agreed to provide testimony exonerating him. The trial record demonstrates that defendant was identified as the probable shooter by Arthur Farmer, the doorman at the boot joint where the shooting occurred. Additionally, Agnes Matson, the ex-wife of the owner-operator of the boot joint, testified at trial that defendant admitted to her that he had shot into the house.

The state submitted affidavits in opposition to defendant's motion for a new trial from Gary Ware, Robert Matson, and Arthur Farmer. Gary Ware, an investigator with the County Prosecutor's office, interviewed Dewight White,[2] defendant's cellmate at Ross Correctional Institution, on May 22, 2001. According to Ware's affidavit, White stated that defendant admitted to him at least 20 times that he was the shooter at the boot joint and that

---

[2] In other parts of the record, White's first name is spelled Dwight. We are unsure of the correct spelling.

defendant told White that he had paid Raney Mease to create an alibi for him. After being shown a photograph of Raney Mease, both Robert Matson, the owner-operator of the boot joint, and Arthur Farmer, the doorman at the boot joint, stated that Mease was not at the boot joint on the night of the shooting and had not been there at any other time. Those statements conflict with Mease's statement that he was at the boot joint at or before the shooting occurred.

Crim.R. 33(A)(6) requires the court to determine whether newly discovered evidence is "material to the defense." To satisfy that standard, the evidence must be admissible. The affidavit of the state's investigator, to the extent that it was offered to prove the truth of the statements defendant's cellmate, Dewight White, made to the investigator, was hearsay evidence, Evid.R. 801, and would be inadmissible at trial if offered for that purpose. Evid.R. 802. Defendant objected to the affidavit on that basis. In its decision, the trial court stated that it considered Ware's affidavit in weighing Raney Mease's evidence. On that basis, as well as Mease's criminal record, the court rejected Mease's testimony on a lack of credibility finding.

The state has offered our decision in *State v. Coleman* (July 29, 2005), Clark App. Nos. 04CA43, 04CA44, 2005-Ohio-3874, 2005 WL 1797040 as additional authority. That case involved both a petition for postconviction relief and a motion for new trial. We stated:

"In reviewing petitions for post-conviction relief, a trial court may, in

the exercise of its sound discretion, weigh the credibility of affidavits submitted in support of the petition in determining whether to accept the affidavit as true statements of fact. *State v. Calhoun*, 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905. That same doctrine also comfortably applies to affidavits submitted in support of a motion for a new trial based upon newly discovered evidence that is material to the defense. In assessing the credibility of affidavits, the trial court should consider all relevant factors, including: '(1) whether the judge reviewing the post-conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.' *Calhoun*, supra, at 285, 714 N.E.2d 905.

"One or more of the *Calhoun* factors, to the extent that any of them apply, may be sufficient to justify a conclusion that an affidavit asserting information outside the record lacks credibility." *Coleman*, 2005-Ohio-3874, 2005 WL 1797040, ¶ 25-27. Mease testified at the hearing on the petition for postconviction relief over which Judge Sunderland presided. However, from

the perspective of Judge Davis, who ruled on the motion, Mease's testimony is akin to an affidavit for purposes of the credibility determination Judge Davis was required to make.

When defendant filed his motion for new trial, he and the state agreed to submit the issue without a hearing, relying instead on the transcript of Mease's testimony at the hearing before Judge Sunderland on defendant's petition for postconviction relief. At oral argument, defendant's attorney stated that the submission was made in that way largely because of the force of the statement in our prior opinion concerning the positive merits of a motion for new trial. However, following Judge Sunderland's retirement, and for other reasons, the motion was determined some five years later by Judge Davis, who had no firsthand knowledge of the trial testimony or of Mease's later testimony in support of defendant's petition. In view of those unique facts, as well as the weight the court gave to the inadmissible hearsay evidence in the investigator's affidavit when it rejected Mease's evidence for lack of credibility, we believe that a hearing is necessary to resolve the issues defendant's motion for new trial presents.

*State v. Beavers*, 166 Ohio App.3d 605, 2006-Ohio-1128, 852 N.E.2d 754 (2d Dist.), at ¶ 15-22 (*"Beavers V"*). We reversed and vacated the judgment denying Beavers's motion for a new trial, and remanded to the trial court for further proceedings.

{¶ 11} On remand, the trial court (and a different judge) conducted a hearing over three days in February and March 2007. Beavers and Mease testified at the hearing. After

the hearing, the trial court concluded that Mease's testimony did not "disclose a strong probability that it will change the result" if a new trial were granted, citing the standard set forth in *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947).

{¶ 12} Specifically, the trial court cited some discrepancies among Mease's own statements in his affidavit, his testimony at the hearing on the motion for a new trial, and his testimony at the hearing on post-conviction relief, as well as conflicts between those statements and the testimony of other witnesses at his trial. These discrepancies related to Mease's exact location when the shooting began (in his van, outside of his van, or driving away), how light it was outside at the time of the shooting, and how many people were outside the boot joint at the time of the shooting. Further, the court relied on Mease's convictions, several of which it characterized as "involving dishonesty," as "weigh[ing] heavily against Mease's credibility at a new trial."[3] Finally, the court noted that Mease was allegedly a witness to another shooting in Columbus, but in that case he had contacted the police; in the court's view, Mease did not give an adequate explanation for his willingness to cooperate with the police in that case and his failure to come forward earlier in this case. The court also found that Mease's testimony was "merely cumulative" of the testimony of Braden Carlisle, which was offered at trial; Carlisle had testified that Beavers was not the shooter. For all of these reasons, the trial court concluded that a jury would not find Mease credible and that, as such, Mease's testimony would not affect the outcome if a new trial were

---

[3]The prior convictions about which Mease testified in 2007 were involuntary manslaughter, receiving stolen property, aggravated burglary, and aggravated robbery. At a hearing several years later, Mease also admitted to additional convictions for receiving stolen property, attempted theft, and obstructing justice. It is unclear whether the trial court knew of the additional convictions and to which convictions it referred when it commented on convictions "involving dishonesty."

held.

{¶ 13}    Beavers again appealed from the trial court's judgment denying his motion for a new trial.   In *State v. Beavers*, 2d Dist. Montgomery No. 22588, 2009-Ohio-5604 ("*Beavers VI*"), we closely examined the requirements set forth in *Petro,* which held that newly discovered evidence that impeaches or contradicts other evidence must be likely to produce a different result in order to warrant granting a motion for new trial.   We held that the "same principle should apply to cumulative evidence."   We also acknowledged that *Petro* "requires that a trial court exercise circumspection" in making this determination, because "such evidence quite often will not be likely to change the outcome."   *Id.* at ¶ 20. We disagreed, however, with the trial court's assessment that the evidence offered by Beavers in support of his motion for a new trial   – namely, Mease's testimony that Beavers was not the shooter – was not likely to change the outcome of the trial:

> Where a case has been tried to a jury, a motion for new trial requires the court to determine whether it is likely that the jury would have reached a different verdict had it considered the newly discovered evidence.   The task of the reviewing court is to then determine whether the trial court abused its discretion in making that determination.   *Dayton v. Martin*, [43 Ohio App.3d 87, 90, 539 N.E.2d 646 (2d Dist.1987).]

> Crim.R. 33(A)(6) applies to "new evidence material to the defense." That materiality standard does not specifically contemplate a credibility assessment of the evidence offered.   However, when the evidence is offered after the 120-day time limit has passed, the defendant must show: (1) that it is

new evidence; (2) that he was unavoidably prevented from discovering within the time limit; (3) that it is based on fact; and (4) that the evidence is being proffered in good faith. 2 Baldwin's Ohio Practice, Section 79:9. The latter two considerations do contemplate some assessment of the credibility of any newly discovered testimony being offered. *State v. Martin*, Montgomery App. No. 20383, 2005-Ohio-209.

After analyzing Mease's testimony from the evidentiary hearing in conjunction with his 1996 affidavit, the trial court identified several inconsistencies [as we have mentioned above.] * * *

The trial court found that the numerous prior inconsistencies in his testimony, coupled with Mease's prior convictions, "several of which [were] for crimes involving dishonesty," would serve to undermine his credibility as a witness at trial. Questions of credibility are, of course, primarily for a jury to determine. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

Because this case involved a shooting on the premises of, and involving patrons of, "an illegal after hours drinking and gambling establishment, or 'boot joint,'" it is not surprising that none of the witnesses who were present at the scene had the credibility of, say, the Archbishop of Canterbury. This includes the sole eyewitness who identified Beavers as the shooter, Arthur Farmer, the victim, who worked as a doorman for an illegal gambling operation for which he did not report his income, who had been using heroin the night before this incident, and who, like Mease, was a

convicted felon. The State dismisses the problems with Farmer's credibility with the observation that the jury nevertheless chose to believe him. This ignores the obvious advantage that Farmer had over Mease, in that the jury heard Farmer testify, but not Mease. We find it unlikely that a jury, hearing Mease testify, would find his testimony to be intrinsically much less worthy of belief than that of the other eyewitnesses.

That leaves the crux of the issue – would Mease's testimony merely be cumulative with that of Carlisle, an eyewitness who did testify at the trial on Beavers's behalf? Carlisle testified, and Mease would testify, that he saw the shooter, and that it was not Beavers. But Carlisle was 100 to 150 feet from where the shots were fired, could not otherwise identify the shooter, and based his conclusion that Beavers was not the shooter upon the fact that the shooter appeared, at that distance, to be shorter than Beavers. Mease was closer to the perpetrator, less than twenty feet, "maybe a little bit shorter distance than between you [defense counsel at the new trial hearing] and the deputy here." Mease testified that "I got close enough to him to see he had a gun, see who he was or to look at him in the face." Like Carlisle, Mease could not identify the shooter, but unlike Carlisle, Mease had a chance to observe the perpetrator's face from within twenty feet – they exchanged words – and Mease got to know Beavers about two years after the shooting. He testified that the shooter was definitely not Beavers.

Although we find the issue to be close, we conclude that Mease's

testimony is not merely cumulative with the testimony of Carlisle at trial, because Mease was in a much better position to observe the perpetrator, which thereby provides a much stronger foundation for his conclusion that Beavers was not the shooter. As a result, the evidence represented by Mease's testimony is different, in kind and character, from the evidence represented by Carlisle's trial testimony.

This was not an overwhelming evidence case. Both sides presented eyewitness testimony, and the eyewitness testimony presented by each side contained some inconsistencies. * * *

As in every criminal case, a jury would not have to find that Beavers was not the shooter; it would merely have to find the existence of reasonable doubt that Beavers was the shooter. We conclude that Mease's testimony is not merely cumulative, and that if a jury were to hear Mease's testimony – subject, to be sure, to vigorous cross-examination – along with all the other evidence from both parties, there is a strong probability that the jury would have reasonable doubt, and acquit.

*Beavers VI* at ¶26-28, 32-37. We reversed the trial court's judgment overruling Beavers's motion for a new trial and remanded "for further proceedings."

{¶ 14} Although we did not specify what action the trial court should take on remand, our holding in *Beavers VI* would, viewed alone, suggest that the trial court was required to grant Beavers's motion for a new trial. But the State filed an Application for Reconsideration of our judgment in *Beavers VI*. In its application, the State argued that it

had its own newly discovered evidence, which was discovered after the trial court's hearing on Beavers's new trial motion, and asked that we remand to the trial court for a new hearing on Beavers's motion, at which the State could present its additional evidence.

{¶ 15} Because the State relied on evidence outside the record, we concluded that this evidence was not a proper basis upon which to reconsider our judgment. *State v. Beavers*, 2d Dist. Montgomery No. 22588 (Decision & Entry, Nov. 25, 2009). We pointed out, however, that our remand "for further proceedings" did not specifically direct the trial court to order a new trial, that Beavers's motion for a new trial "technically remains open for decision," and that the trial court had discretion "whether to deem the record closed as of the time that it originally decided Beavers's motion for new trial, or whether to take new evidence on the motion." But we further noted that, by holding as we did in our opinion, we had determined that the evidence in the record as of the time of the trial court's previous decision "compelled a decision granting Beavers's motion for a new trial."

{¶ 16} The trial court elected to hold another evidentiary hearing on Beavers's motion for a new trial; the hearing occurred on January 5, 2011. Beavers, Mease, and Ware, the investigator who had previously submitted affidavits, testified at the hearing.

{¶ 17} Beavers's and Mease's testimony suggested that, while they were in prison together, Beavers and Mease had inadvertently made the connection that they were both present at the shooting for which Beavers had been convicted. According to Mease, he (Mease) was the previously unidentified driver of the van that fled from the scene and informed police about the shooting at the boot joint. At the 2011 hearing, Mease testified about his hairstyle at the time of the shooting, which he described as a "fade haircut," which

was shaved on the sides and short on top of his head. Mease also admitted that, in another case where the defendant's name was "Waddell," he had submitted an affidavit in support of a petition for post-conviction relief, claiming that he had been present at the scene of a crime for which Waddell had been convicted. The court noted that a Dayton police officer who testified at the 2007 hearings described the driver of the van as having bushy hair, and that the court considering Waddell's petition for post-conviction relief had "discounted" Mease's affidavit as lacking in credibility.[4]

{¶ 18} Ware testified for the first time in this case at the January 2011 hearing; his affidavit had been offered previously. He stated that, in 2001, he had interviewed Dewight White, who had shared a cell with Beavers in prison for a short time. White claimed in the interview that, on more than twenty occasions, Beavers had talked with him about the incident at the boot joint and had admitted shooting a gun into the house following an altercation with another man at one of the gaming tables in the basement of the house. According to White, Beavers "thought he might have killed" the victim. White also told Ware that Beavers and Mease had conspired to come up with an alibi for Beavers related to the incident, although Mease had not actually witnessed the event. White further claimed that Beavers had given Mease's brother or brother-in-law $4,000 in exchange for help with his alibi.

---

[4] No evidence was presented at the 2011 hearing regarding the disposition of Waddell's petition for post-conviction relief or that court's assessment of the credibility of Mease's testimony in that case. However, *State v. Waddell*, 10th Dist. Franklin No. 98AP-676, 1999 WL 52975 (Feb. 2, 1999), confirms the trial court's statement, in this case, about the Franklin County court's assessment of Mease's credibility. Mease's testimony in that case bolstered Waddell's claim of self-defense, because Mease claimed to have seen the victim holding and brandishing a gun just before Waddell shot him.

**{¶ 19}** Ware also testified that he had interviewed Robert Matson, the owner of the boot joint, in June 2001 and had shown Matson a picture of Mease. According to Ware, Matson said that Mease looked familiar, but that Matson "was positive" that Mease was not at the boot joint on the night of the shooting, because "the only people that come there are regular gamblers and he knows every gambler in town and * * * this [Mease] was not a regular person that comes to the boot joint." Matson was not at the boot joint at the time of the shooting, but he went home just prior to the shooting. Matson's wife told Ware, by phone, that Beavers had called her the day after the shooting and apologized.

**{¶ 20}** Finally, Ware testified about conversations he had with Arthur Farmer, the victim of the shooting. According to Ware, Ware showed Farmer a photograph of Mease, and Farmer stated that Mease "definitely" was not at the boot joint the night of the shooting. Ware also claimed to have confirmed with an unnamed Channel 2 meteorologist that, on the date and time of the shooting, it would have been daylight.

**{¶ 21}** No evidence was presented as to whether the whereabouts of Matson, his ex-wife, or Farmer were known by the State in 2011, or whether they were available to testify if a new trial were held.

**{¶ 22}** After the hearing, the trial court again overruled Beavers's motion for a new trial. The court stated:

> Defendant's motion is based on what he describes as newly discovered evidence, i.e., Mease's testimony. Upon the second review of Mease's testimony, this Court finds such testimony to be even less credible than in the 2007 Hearings. If Mease were to testify at a new trial, the jury would hear

evidence of his involvement in Waddell's case, as well as the testimony offered by Ware regarding his interview with White. This evidence, combined with the inconsistencies in Mease's testimony as set forth in this Court's Decision, Order and Entry Overruling Defendant's Motion for a New Trial issued on December 19, 2007, this Court finds that no reasonable jury would find Mease to be a credible witness at trial. O.R.C. Section 2495.80 is not a vehicle to permit a defendant to obtain a new trial based on purely fabricated evidence. * * *

**{¶ 23}** Beavers again appeals from the trial court's denial of his motion for a new trial, challenging the trial court's conclusion that Mease's testimony did not warrant a new trial because it was unlikely to affect the outcome of the case.

**{¶ 24}** As discussed above in some of the previous decisions of this court, "[t]o warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus. We have already addressed several of the elements of this test in other opinions and decisions, and both we and the trial court are bound by these holdings. *State v. Love*, 194 Ohio App.3d 16, 2011-Ohio-2224, 954 N.E.2d 202, ¶ 5 (1st Dist.).

**{¶ 25}** In *Beavers III*, we agreed with the trial court's conclusion that Beavers's

attorney could not have reasonably been expected to identify Mease as a potential witness based on the information available to him at the time of trial; thus, Mease's testimony was "discovered since the trial" and "could not in the exercise of due diligence have been discovered before trial." In *Beavers VI*, we concluded that Mease's testimony was "not merely cumulative" to and did not "merely impeach or contradict" the testimony of other witnesses, because it was "different, in kind and character," from the other testimony. This conclusion and the undisputed fact that Mease's testimony, if believed, would exonerate Beavers, also indicate that the testimony was material. Thus, the only *Petro* factor that arguably remained in dispute when the court held its most recent hearing on Beavers's motion for a new trial was whether there was a strong probability that the evidence would change the outcome of the trial if a new trial were granted. We note, however, that we have already expressed the view that Mease's testimony created "a strong probability that the jury would have reasonable doubt, and acquit." *Beavers VI* at ¶ 37.

{¶ 26} In its most recent judgment, the trial court concluded that Mease's testimony would not affect the outcome of the case because Mease lacked credibility and was "even less credible" in 2011 than at the hearing in 2007. (After the 2007 hearing, we observed that Mease's testimony was not "intrinsically much less worthy of belief" than other witnesses presented at trial, who were also convicted felons, drug users, and/or operators of an illegal gambling operation.) The trial court's conclusion was based, in part, on its belief that the jury in a new trial would hear evidence of Mease's "involvement in Waddell's case, as well as the testimony offered by Ware regarding his interview with [Mease's cellmate Dwight] White." We see several problems with this conclusion.

**{¶ 27}** It is well settled (and has been previously noted in this case) that "[q]uestions of credibility are, of course, primarily for the jury to determine." *Beavers VI* at ¶ 32, citing *DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Although we acknowledge that the State would have several bases upon which to challenge Mease's credibility if a new trial were granted, the same is true with respect to most of the witnesses in this case. Some witnesses on both sides of the case were criminals, convicted or not, and had questionable or self-serving reasons for testifying as they did. In our view, the trial court erred in attempting the resolve how a jury would weigh the credibility of these witnesses. This is not the trial court's role in a case involving a jury trial and, as we have previously held in this case, considering the colorful array of past and potential witnesses in this case, it is not apparent that Mease's testimony would be "intrinsically much less worthy of belief than that of the other eyewitnesses." *Id.* at ¶ 33.

**{¶ 28}** Furthermore, the trial court relied on Ware's testimony "regarding his interview with White" and suggested that any testimony offered by Mease at a new trial would be undercut by Ware's testimony. However, as we discussed in *Beavers V*, Ware's statements by affidavit (or later through testimony at the 2011 hearing) were offered to prove the truth of White's statements that Beavers had admitted his involvement in the crime and had conspired with Mease to clear his (Beavers's) name. The statements were hearsay and inadmissible at trial. Evid.R. 801 and 802; *Beavers V* at ¶ 18. Thus, the trial court incorrectly concluded that the evidence offered by Ware in the form of hearsay statements would undercut Mease's testimony before a jury, and it incorrectly relied on such statements itself.

{¶ 29} Moreover, Ware believed that White, who was Jamaican, had been deported several years before the hearing, and the State did not suggest that it intended or was able to call White as a witness at a new trial. Even if White were available to testify at a new trial, White, like Mease, was a convicted criminal. According to Ware, White sought a transfer to another prison and a positive statement about his cooperation with the State for use at his parole hearing in exchange for his information. Any jury would be required to assess White's credibility in light of these factors. The trial court's finding that Ware's testimony would be admissible and that White's assertions would be credited was misplaced.

{¶ 30} Finally, the trial court's 2011 denial of the motion for a new trial relied on "inconsistencies in Mease's testimony" as set forth in the court's December 19, 2007, decision and entry denying Beavers's motion for a new trial. When we reversed the 2007 judgment in *Beavers VI*, we noted that "the eyewitness testimony presented by each side contained some inconsistencies," and we discussed these inconsistencies. *Id.* at ¶ 28-31. We nonetheless concluded that a "strong possibility" existed that, considering Mease's testimony along with the testimony of the other witnesses, a jury could have found reasonable doubt that Beavers was the shooter. In our November 25, 2009 Decision and Entry related to the State's application for reconsideration, we also stated that the evidence in the record as of the time that the trial court rendered its 2007 decision denying Mease's motion for new trial – the decision which first pointed out the inconsistencies in Mease's testimony – "compelled a decision granting Beavers's motion for a new trial."

{¶ 31} We stated that the issue might be resolved differently only if, in the trial court's discretion, it decided to take additional evidence. Otherwise, our previous findings

are binding upon the trial court. However, the only additional evidence presented at the 2011 hearing upon which the trial court relied was Ware's testimony, which reiterated allegations that were contained in his earlier affidavits.

{¶ 32}    In light of our previous holdings, especially *Beavers VI*, and in the absence of additional, substantive discrepancies in Mease's testimony, the trial court abused its discretion in citing these inconsistencies as a basis for its second denial of the motion for a new trial.

{¶ 33}    Beavers's assignment of error is sustained.

{¶ 34}    The judgment of the trial court will be reversed, and the trial court will be ordered to grant Beavers's motion for a new trial.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:
Carley J. Ingram
William F. Oswall Jr.
Hon. Barbara P. Gorman